ALBANY,
Feb. 1808.

## Smith *against* Elder.

Smith
v.
Elder.

THIS was a special action on the case. The declaration was in substance, as follows : The plaintiff was owner of the *American* ship, the *Factor*, of which one *Caldwell* was master, on the 5th *June*, 1805. The ship was then lying in the port of *New-York*, bound on a voyage to *Greenock* in *Scotland*. The defendant, (who had taken a passage on board of the ship) without the knowledge or consent of the plaintiff, as owner, or of the master, and contrary to the express orders and advice of the plaintiff, and of the master, clandestinely put on board of the ship a quantity of *India* and *China* goods, consisting of handkerchiefs, teas and nankeens, for the purpose of conveying the same to *Greenock*, there to be by the defendant, taken and smuggled on shore, contrary to the commercial laws and regulations prevailing at *Greenock* : the defendant well knowing, at the same time, that the said goods and articles were, by the laws and regulations of *Great-Britain*, prohibited, and deemed contraband, when imported into the said port and city of *Greenock*, in any *American* ship, or vessel belonging to a citizen or citizens of the *United States*, and well knowing, at the same time, that the said goods and articles, if found on board of the said ship, in the port of *Greenock*, by the officers of the customs there, would be liable to seizure, and in consequence thereof, the owner of the said ship would be liable to great pains and penalties, and that the said ship would also be liable to seizure and condemnation. The ship having arrived at *Greenock*, the officers of the customs came on board, and upon searching the ship, discovered the said articles of merchandize, concealed in the possession of the defendant, and thereupon seized the said ship, on account of the articles being found on board, in consequence of which seizure, the plaintiff, in or-

In an action of trespass on the case, brought against the defendant, for putting on board of an *American* vessel, bound from *New-York* to *Scotland*, goods which, by the laws of *Great-Britain*, were prohibited from being imported into that country, in foreign vessels, in consequence of which, the plaintiff's vessel was seized in *Greenock*, and the master compelled to pay a large sum of money, to procure her release ; it was held, that the action was maintainable here, and that, even, if this court had no jurisdiction, it was too late, after a plea in bar, to object to the jurisdiction. On a motion for a new trial, the defendant cannot object to the form of action. The confession of the defendant, that she did carry con-

*traband goods* in the vessel, and that the vessel was seized in consequence, and the testimony of the master, that the goods so carried, were *contraband*, by the laws of *Great-Britain*, were deemed sufficient evidence, in this case, of the law of that country.

ALBANY,
Feb. 1808.

Smith
v.
Elder.

der to procure the release of the ship, and to prevent forfeiture, condemnation and loss of the said ship, under the laws and regulations prevailing at *Greenock*, was under the necessity of paying, and did actually pay, or cause to be paid, to the collector of the said port of *Greenock*, the sum of 200*l.* sterling, and was put to other charges and expenses, whereby, &c.    The defendant pleaded *not guilty*.    The cause was tried before Mr. Chief Justice *Kent*, at the *New-York* sittings, in *June*, 1807.

On the trial, it was proved, that the defendant, when the ship was about to sail from *New-York*, for *Greenock*, engaged her passage.    The master having had some intimations, which induced a suspicion, that she would attempt to carry prohibited goods, expressly cautioned her from putting on board, or attempting to carry with her to *Greenock*, any goods of the produce or manufacture of *India* or *China*, and particularly *teas*, *nankeens*, and *silks*, as they were contraband, by the laws of *Great-Britain*, and would, if found on board, in *Scotland*, subject the vessel to seizure and condemnation.    On the arrival of the vessel at *Greenock*, the officers of the customs, on searching the ship, found in the defendant's trunk, several rolls of nankeen and *India* silk, and in her bed thirty pieces of *Bandana* handkerchiefs, and under one of the births in the state-room, thirty canisters of tea, and two demijohns of liquors.    The ship was immediately seized, and the plaintiff was obliged to employ counsel, and, after repeated applications, at the board of customs, at *Edinburgh*, the vessel was liberated, on the payment of 200*l.* sterling, and all fees, after being detained twenty-five days.    On the goods being found in the possession of the defendant, the plaintiff remonstrated with her on the impropriety of her conduct, upon which she wrote the following paper, addressed to the master, which was read in evidence on the trial:  " As the ship *Factor* has " been put under stoppage, on account of sundry articles " of contraband goods being found on board, part of " which is my property, and was taken on board without

" your knowledge, or belief, and that you had repeatedly
" put the question to me whether I had any thing of the
" kind on board or not, I denied having any thing, and,
" therefore, oblige my heirs, and successors, to pay all
" costs, damages and expenses, which you or the owner
" of the ship shall sustain, on account of the said goods
" being found on board.  *July* 8th, 1805." Signed
" *Anne Elder.*"

The counsel for the defendant, then moved for a nonsuit,
1.  Because the declaration was for a *tort*, and the evidence
was not sufficient to prove a *tort*, inasmuch as *tort* or
misfeasance can only be committed in contravention of the
law of nature, or of the laws of the country in which
the suit is instituted.   2.  As by the paper produced there
was a special contract for an indemnification by the de-
fendant, the action should have been brought on the con-
tract ; but the judge overruled the objections.

The plaintiff then offered, in evidence of the revenue
laws of *Great-Britain*, as stated in the declaration, a printed
book, entitled,  " *The law of shipping and navigation*," by
*John Reeves*, esq. printed in *London*, as containing the
laws on the subject.  The defendant's counsel objected,
that such evidence of the laws of *Great-Britain*, was in-
admissible.

The plaintiff then proved, by the testimony of the
master, that he had been a long time in the *Greenock* trade,
and had always understood and believed, that it was con-
trary to the revenue laws of *Great-Britain*, to import, in
*American* bottoms, articles of the description above stated,
and that the importation of such articles, would subject
the vessel to seizure and condemnation ; and that he had
known several seizures, for the same cause, as in the pre-
sent case.  The plaintiff would have produced further *pa-
rol* evidence of the revenue laws of *Great-Britain*, on this
subject, by commercial characters, then in court; but the
Chief Justice thinking *Reeves*' " law of shipping and na-
" vigation," sufficient for the purpose, it was accordingly
read in evidence ; and the jury, under the charge of the

ALBANY,
Feb. 1808.

Smith
v.
Elder.

judge, on the whole evidence, found a verdict for the plaintiff for 1,150 dollars.

A motion was made, at the last term, to set aside the verdict, and for a new trial.

*T. A. Emmet*, for the defendant. 1. The act done by the defendant, was not contrary to the laws of this country, nor can it be considered as unlawful here; nor was the damage to the plaintiff, a consequence of the unlawful manner of doing an act in itself lawful. There has been, then, no *tort*; but the declaration is for a *tortious* act. No such suit can be maintained, where the act is lawful, or where there is nothing unlawful, or improper, in the manner of doing the act.* An action on the case will not lie for an act not prohibited or unlawful, though it may prove injurious to the party. It is *damnum absque injuria*. Again, the damage arose out of this state, and in a country having competent tribunals to afford redress. It was not the consequence of any thing done here ; for it was the carrying the goods *to Greenock*, that produced the seizure ; if the vessel had been lost, or had gone to *Madeira*, no injury would have ensued. The damage and the cause of damage, both arose out of the jurisdiction of the state. No action on the case will lie, for any act done in a foreign country, unless in violation of some personal right, or of some contract.* There are some cases, it is true, in which courts have taken cognizance of actions where the damage or injury complained of, arose out of their jurisdiction; but these have either been on contracts, or where a trespass has been committed in a country, in which there existed no tribunal to afford redress.

Suppose an *American*, in *London*, should attempt to put *wool* on board of an *American* ship, for exportation, and the vessel should be, in consequence, seized and condemned, could an action be brought in this court by the owner, against the person who had violated the commercial laws of *Great-Britain ?* There is no law here, against carrying *India* or other goods to *England ;* and where there is no law, there is no transgression.† Again, suppose an *American* passenger,

* 2 *Black. Com.* 208. *System of Pleading,* 459. 1 *Com. Dig. Action on the case,* (B 3.)

† 2 *Wils.* 314.

‡ 2 *Inst.* 170.

on board of an *American* ship, should take *English* goods from *England*, to *France*, and the vessel should, for that cause, be seized and condemned, in that country, would any action lie, in this country, against the party ?

2. There was no competent or legal proof of the laws of *Great-Britain*, on this subject. The laws of a foreign country, cannot be taken notice of by the courts here, unless proved by written documents, or proper witnesses.* In the case of *Bethlinck* v. *Schneider*,† Lord *Kenyon* said, that the laws of a foreign country could not be proved by persons casually picked up in the street, but by proof duly authenticated, obtained from the country, whose laws were proposed to be proved. He mentioned the case of *Morris*, who married the daughter of Lord *Baltimore*, in *Holstein*, in which the laws of *Holstein* were proved by documents, properly authenticated. So in *Hulle* v. *Heigtman*,‡ Mr. Justice *Le Blanc* refused to permit the laws of *Denmark*, contained in a written ordinance, relative to seamen, to be proved by the *Danish* consul. In the case of *Kenney* v. *Vanhorne* and *Clarkson*,§ decided by this court, the distinction in the *English* courts was recognized, that though the *common* or *unwritten* law of a foreign country, might be proved by intelligent witnesses of the country whose laws were to be proved, yet *parol* evidence of the *statutes*, or written ordinances of such country, was inadmissible. There must, then, be documentary evidence of a foreign statute. The printed book of Mr. *Reeve* was no evidence ; had that gentleman himself been offered as a witness at the trial, his testimony could not have been received, to prove the statutes of *Great-Britain*. His book, however respectable, is inferior to his own testimony, for that would be delivered on oath ; and his book appears without any such sanction. How is it to be ascertained, that the volume offered, was even a true copy of the original manuscript of the author ? It may have been a printed copy, from another printed copy. The plaintiff ought to have procured an exemplification, or

ALBANY,
Feb. 1808.

Smith
v.
Elder.

* 1 *P. Wms.* 431. *Peake's N. P.* 18.
† 3 *Esp. Rep.* 58.

‡ 4 *Esp. Rep.* 79.

§ 1 *Johnson*, 385.

sworn copy of the *British* statute, relative to the subject in question.

*A. Bleecker* and *Hoffman*, contra.   1. An application for a new trial is to the discretion of the court, which is never exercised on a mere mispleading, but the party is left to seek his remedy, by motion in arrest of judgment, or a writ of error.   There is no objection to the justice of the plaintiff's claim ; and it is enough, that there is a verdict for the plaintiff on the merits.   But, in truth, the present is the only proper form of action.   The action on the case is a beneficial remedy, transitory in its nature, as much so, at least, as *trespass* or *trover.*   It has been decided, that *trover* will lie in *England*, for a conversion in *Ireland ;*[\*] and *trespass* has been brought in *England*, for a false imprisonment in *Minorca.*[†] ˎ The case of *Rafael* v. *Verelst,*[‡] was an action of *trespass*, brought in *England*, by the plaintiff, who was an *Arminian* merchant, against the President of *Bengal*, for procuring, by awe, fear and influence, and contrary to his own inclination, a sovereign and independent prince, the *Nabob* of *Owd*, to imprison the plaintiff, who was one of his own subjects.   It would seem strange, then, that the present action could not be maintained, merely because the ship in which the mischief originated, happened to be in a foreign country, where the damage was sustained.   This suit is not brought for an offence in exporting contraband goods, or for a fine or penalty in transgressing a foreign law, nor to vindicate the commercial laws of *Great-Britain ;* but for an act done by the defendant, knowingly and wantonly, to the injury of the plaintiff.   The wrongful act was commenced in *New-York ;* but if, considered as commenced in *Scotland*, still an action will lie here, for the damages which have been sustained.   Lord *Kaims,*[§] in speaking on the subject of the jurisdiction of the courts of *Scotland*, in respect to foreign matters, observes, " that the proper place for punishment is, where the crime is committed ; but a claim for reparation, arising from a foreign delinquency, is different ; being founded on the rules of common justice, it is

* 8 *Mod.* 322.
And see 4
*Term*, 503.
† *Mostyn* v.
*Fabrigas, Cowp.*
161.
‡ 2 *Wm. Black.*
1055.

§ *Principles of
Equity*, vol. 2.
p. 326.

a claim that undoubtedly belongs to the jurisdiction under consideration. No man, who injures another, ought to reckon himself secure any where, till he make reparation ; and if he be obstinate or refractory, justice requires, that he be compelled, wherever found, to make reparation." A person, it is true, may do what he pleases with his own property, but not so as to injure the property of another. That the plaintiff has sustained a great injury, and that the defendant is the sole and culpable author of that injury, cannot be doubted. The plaintiff is entitled to redress somewhere, and why not in this court ? The defendant is not deprived of any advantage of which she might avail herself in *Scotland.* Whatever would be a justification where the offence was committed, will be a justification where the offence is tried.\* Had *assumpsit,* or any other form of action been brought, the same objections might have been made, as have been raised in the present case ; and in estimating the damages, the same reference would have been made to the laws of *Great-Britain.* Again, the objection to the jurisdiction comes too late after a plea in bar, and a verdict.†

\* *Cowp.* 173.

† 2 *Mod.* 273. *Cowp.* 166. 172.

2. The averment in the declaration, that the act of the defendant was contrary to the law of *Great-Britain,* was unnecessary. It would have been sufficient to have stated, that the goods and ship were liable to seizure by the custom-house officers, and that they were seized. It was not necessary, therefore, to prove the statute law of *Great-Britain.* Material averments only need be proved, in this action. The defendant is not charged with violating the laws of *Great-Britain,* but with an act which she knew, at the time, was wrong, and would, if discovered, prove injurious to the plaintiff. Her knowledge of the law, and of the impropriety of the act, is evident, from her whole conduct, and her written declaration puts her knowledge beyond all question. Why, then, should the plaintiff be put to the expense, and delay, of procuring documentary evidence of *British* statutes, when the defendant confesses her knowledge of the laws, and the in-

jury she has done to the plaintiff, by a transgression of them? It was enough to prove the seizure, for the cause alleged; and it was then incumbent on the defendant to show, that the seizure was unauthorised. The cases cited by the other side are not applicable. In all of them, the defendant sets up the foreign law, in order to defeat the title of the plaintiff, acquired by the law of the country where the suit was brought. Resting his whole defence on the law of a foreign country, in opposition to the domestic law, the *English* court, and this court, very properly, required the proof of such law to be made out by the most authentic documents. Though the local regulations, or municipal laws of a foreign country, are generally to be proved as facts, and authenticated by written documents; yet where a foreign statute or ordinance relates to the commercial intercourse with other nations, and affects the subjects of all nations, it may be considered as a general law, known to all the world, and may be proved by parol. In the case of *Talbot* v. *Seeman*,* the supreme court of the *United States* seemed to think, that the marine ordinances of a foreign nation might be read without being proved; and they decided, that a public decree of the government of *France*, on a subject of common concern to all nations, having been promulgated by the government of the *United States*, as a law of *France*, might be read without proof. The marine ordinances of *France* are often read from *Valin;* and, in cases of insurance, at *nisi prius*, before the judges of this court, the ordinances of *Spain*, in relation to her colonies, have been allowed to be proved by *parol*.

* 1 *Cranch*, 38.

*Emmet*, in reply, observed, that the case of *Talbot* v. *Seeman*, was in the admiralty court, which is bound to take notice of the maritime laws of all countries: and that the copy of the *French* decree was taken from the office of the secretary of state, and authenticated by the act of the government of the *United States*. Courts of common law, are not bound to know the laws of foreign

countries; but they must be produced duly authenticated and proved.

VAN NESS, J. delivered the opinion of the court. A new trial is moved for, in this cause, upon two grounds.

1. That as the plaintiff had declared in *tort*, the evidence was not sufficient to prove it, inasmuch as an action for a misfeasance, or *tort*, cannot be maintained for an act done merely in contravention of the revenue laws of *Great-Britain*.

2. A book entitled, " *The Law of Shipping*," &c. was not legal evidence of the statute laws of *Great-Britain*, and that parol evidence thereof could not be received.

The defendant cannot avail herself of the first ground, on a motion for a new trial. If the plaintiff has not disclosed, in his declaration, a cause of action, cognizable by this court, *that* must be taken advantage of, in another way. The judge, at the trial, was authorised to try the issue of fact only, between the parties, and was not to decide, whether the facts set forth in the declaration, if true, would, or would not entitle the plaintiff to judgment, on the return of the *postea*. But I think, if this objection were permitted to be urged, on a motion for a new trial, that it comes too late. It is not denied that, in consequence of the acts of the defendant, the plaintiff has been greatly damnified; and it is conceded, also, that the courts of *Great-Britain* would be competent to redress the injury the plaintiff has sustained. But the jurisdiction of this court is denied. The defendant has submitted to the jurisdiction of this court, and by pleading a plea in bar, has, in fact, affirmed it, and is, therefore, now precluded from making the objection. To this point, the cases are full and explicit. (*Mostyn* v. *Fabrigas*, *Cowp.* 72. *Co. Lit.* 127 *b. Barrington* v. *Venables*, *T. Raym.* 34. *Trelawney* v. *Williams*, 2 *Vern.* 484.) For these reasons, we are of opinion, that, upon the first ground, a new trial ought not to be granted. We wish, however, not to be

Vol. III.                    P

Smith
v.
Elder.

understood as entertaining the least doubt of our jurisdiction in this case.

The other point is equally clear. It is not necessary, on this occasion, to decide what evidence we should require of the statute law of *Great-Britain*, or the written law of any other country. Here the defendant has, in writing, confessed that these goods were shipped contrary to the laws of the country to which they were carried. She calls them " *contraband goods*," and stipulates to indemnify the plaintiff for all the injury he may sustain, in consequence of her misconduct.

The master of the ship proves, (and to his testimony there does not appear to have been any objection at the trial) that it was contrary to the revenue laws of *Great-Britain*, to import, in *American* bottoms, goods of the description of those in question, and that such importation would subject the vessel to seizure and condemnation. This evidence of the revenue laws of *Great-Britain*, in my opinion, was abundantly sufficient, without reading *Reeves' Law of Shipping*, in support of it. The court are, therefore, of opinion, that a new trial ought to be denied.

Rule refused.(*a*)

(*a*) THOMPSON, J. was absent, from indisposition.