WILLIAM BAILEY, PLAINTIFF IN ERROR, *v.* WILLIAM B. DOZIER.

Where a bill of exchange is presented for acceptance or payment, which is refused, it is sufficient if the officer who presents it makes a note at the time of the facts which occurred on presenting the bill. The formal protest may be drawn up afterwards, at the convenience of the notary.

Under the laws of Mississippi, a protest is not essential to enable the indorsee of an inland bill of exchange to recover the amount of it. The statute of Mississippi is similar to the English statutes of 9th and 10th of William III., and 3d and 4th of Anne, and must receive the same construction with them.

Before those statutes, the indorsee of an inland bill had a right to recover the amount of it from the drawer. This right was not taken away by them; but they gave an additional right to interest and damages. The common law right remains.

If a plea to the jurisdiction and a plea of *non assumpsit* be put in, and the issue be made up on the latter plea only, no notice being taken of the former, and upon this state of the pleadings the cause goes on to trial, the plea to the jurisdiction is considered as waived.

Although the declaration began with an averment that the drawer and indorser were citizens of the same State (which, of course, would oust the jurisdiction of the Circuit Court), yet as it afterwards averred that the indorser, who was also the payee, was an alien and citizen of Texas, this was sufficient to maintain the jurisdiction.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Southern District of Mississippi.

The facts were these.

On the 18th of January, 1838, the following inland bill was drawn.

$2,670. *Paulding, 18th January*, 1838.

Twelve months after date of this my first and only bill of exchange, pay to the order of John D. Fatheree two thousand six hundred and seventy dollars, for value received, and place the same to account of your ob't servant,

WILL. B. DOZIER.

Mr. PIERSON LEWIS,
    *Jackson, Mississippi.*

Indorsed, — J. D. FATHEREE.

Accepted, — PIERSON LEWIS.

Being indorsed by Fatheree and accepted by Lewis, it passed into the hands of Bailey, the plaintiff in error.

On the 21st of January, 1839, when the bill became due, it was presented and protested for non-payment, under the circumstances which will presently be stated.

In April, 1841, Bailey brought suit in the Circuit Court of the United States against Dozier and Fatheree, who were both alleged in the writ to be citizens of Mississippi, Bailey being stated to be a citizen of Virginia. The declaration commenced with stating that Dozier and Fatheree were both citi-

zens of Mississippi, but afterwards, in reciting the bill, said, "and then and there requested the said Lewis to pay, twelve months after the date of said bill of exchange, to John D. Fatheree, who is an alien and resident of the republic of Texas," &c. The declaration contained also counts for money "lent and advanced," "paid, laid out, and expended," and "had and received."

To this, the defendant pleaded two pleas. The first was as follows :—

"And the said defendant, William B. Dozier, in his own proper person, comes and says, that this court ought not to have or take further cognizance of the action aforesaid, as to him, said Dozier, because he says that the said bill of exchange, in the plaintiff's declaration mentioned, was drawn in the State of Mississippi, to wit, at Paulding, in Mississippi, payable at Jackson, in the said State of Mississippi, and that the drawer and indorser and acceptor thereof were, and yet are, citizens and resident in the State of Mississippi; and said bill is not a foreign bill of exchange ; and this the said William B. Dozier is ready to verify; wherefore he prays judgment, whether this court can or will take further cognizance of the action aforesaid.

"And for further plea in this behalf, the said William B. Dozier says, that this court ought not to have or take further cognizance of this action, because he says that the said William Bailey, the plaintiff, is a citizen of the State of Mississippi, to wit, of the county of Rankin, in said State, and this he is ready to verify; wherefore he prays judgment, whether this court can or will take further cognizance of the action aforesaid."

The second plea was *non assumpsit.*

The record showed that the plaintiff joined issue upon the last plea, without taking any notice of the first.

In May, 1843, the cause went to trial, upon this state of the pleadings, after a discontinuance had been entered as to Fatheree, when the jury, under instructions given by the court, found a verdict for the defendant.

The bill of exceptions taken by the plaintiff, after reciting the bill and protest by David H. Dickson, calling himself a justice of the peace and *ex officio* notary public, proceeded thus :—

"The plaintiff then introduced David H. Dickson, the notary, as a witness, who, being first duly sworn, stated on oath, that, on the day the bill fell due, he went to the Union Bank in Jackson, and demanded payment of said bill of the teller of said bank, and was answered by him that there were no funds in the bank to pay said bill. Witness did not know where said Pierson Lewis, the acceptor, lived; but on coming out of

the bank a person was pointed out to him as said Lewis, the acceptor of the bill. Whereupon witness demanded payment of said Lewis, who answered that he could not pay the same. Whereupon witness protested said bill for non-payment, as well against the acceptor as all other parties to the same, and on that day deposited in the post-office at Jackson notice of the dishonor of said bill, in season to go out by the next mail, directed to Paulding, Mississippi, for said Will. B. Dozier, the defendant, which is the residence and post-office of said Dozier, who is the drawer of said bill, advising him of the non-payment thereof by the acceptor, and that the holder looked to him for payment.

" On his cross-examination, witness stated, that after he left the bank a person was pointed out to him by the plaintiff as Pierson Lewis, of whom he made demand of payment, which was refused; that the protest now attached to said bill of exchange is not the original protest made out by him on the day of said above-named demand.

" That on making demand of said bill, as above stated, he made out a protest and attached the same to the bill by wafer, and delivered the bill and protest to the plaintiff; that afterwards the plaintiff sent a messenger to him, stating that said protest would not do, and requesting another; and thereupon witness tore the bill away from it, and made out another, differing from the first, and delivered it, also annexed to said bill, to said messenger. That near a year afterward the plaintiff applied, in person, to said witness, and stated that said second protest was also materially defective, and requested witness to make out another; and witness then again separated said bill from said second protest, and made out a third protest, and after wafering the bill thereto, delivered the said bill and protest to the said plaintiff, which last is the protest now read to the jury, and the two rents or mutilations on said bill designate the parts at which it was wafered to each of said protests.

" That the original protest differed from the second, and the third from both the preceding.

" Whereupon the defendant, by attorney, moved the court to exclude said bill of exchange from the jury for the want of valid protest; which motion, after argument, the court sustained, and instructed the jury that the plaintiff could not sustain his action on the bill of exchange, unaccompanied by a protest.

" To which plaintiff's counsel excepted, and tendered this bill of exceptions before the jury retired from the box, and prayed that the same may be signed, sealed, and made a part of the record in this cause; which is done accordingly.

"S. J. Gholson. [seal.]"

Upon this bill of exceptions the case came up to this court.

It was argued by *Mr. Bibb,* for the plaintiff in error, and *Mr. Crittenden,* for the defendant in error.

*Mr. Bibb,* for the plaintiff in error, made four points: —

1st. That the judge erred in excluding the notarial protest from the jury.

2d. The court erred in the instruction given to the jury.

3d. The judge erred in taking upon himself to decide the facts testified by the witness, instead of leaving it to the jurors to respond to the facts properly within their province.

4th. That upon the evidence, the plaintiff was entitled to verdict and judgment; and that the decision of the court, as certified in the bill of exceptions, was erroneous.

No protest of the bill, which was an inland bill, was necessary to enable the plaintiff to sustain his action for the sum named in the bill. Brough *v.* Parkins, 2 Ld. Raym. 992; Chitty on Bills (9th Lond. ed.), 334, 335, 464, 465; 3 Kent's Com. 93, 94.

The proof of the demand of payment, of the refusal, and of notice to the defendant of the dishonor of the bill, was sufficient. Chitty on Bills (9th Lond. ed.), 335, 658, 659; Townsley *v.* Sumrall, 2 Peters, 170.

The judge gave to the certificate of protest of an inland bill, made by the notary residing in the State and district wherein the suit was brought and trial had, a magnified dignity, a power of diction, self-sufficient and indispensable, which the law did not allow to a notarial certificate in such a case.

In Townsley *v.* Sumrall, the Supreme Court of the United States said: — "It is admitted, that, in respect to foreign bills of exchange, the notarial certificate of protest is of itself sufficient proof of the dishonor of a bill, without any auxiliary evidence." "But where the parties reside in the same kingdom or country, there is not the same necessity for giving entire verity and credit to the notarial protest. The parties may produce the witnesses upon the stand, or compel them to give their depositions. And, accordingly, even in cases of foreign bills, drawn upon, and protested in, another country, where the suit is brought, courts of justice sitting under the common law require that the notary himself should be produced, if within the reach of process, and his certificate is not *per se* evidence. This was so held by Lord Ellenborough in Chesmer *v.* Noyes, 2 Campbell's R. 129." Townsley *v.* Sumrall, 2 Peters, 179, 180.

The plaintiff, Bailey, produced the notary, David H. Dickson, as a witness. His statements, upon oath, in chief and

upon cross-examination, proved every fact, — of presentation of the bill at the proper time for payment, the demand of payment thereof made of the acceptor, his refusal to pay, the protest for non-payment, and the notice of the dishonor of the bill sent to the drawer by the first mail after the dishonor of the bill.

When the notary so testified in open court, at the trial, of what importance was the notarial certificate made by him *ex parte?* That the notary made three or three dozen notarial certificates of protest is immaterial. In what respect did the first, second, and third certificates of the notary differ one from another? It is not pretended that they were contradictory the one to another, nor that either was contradictory to the evidence given by the notary to the court and jury when on his oath. In such case, the credibility and weight of the evidence would have been a question of fact proper for the jury to try, and not a question of law to the court.

Supposed omissions were the subjects of the several notarial certificates, not falsehoods.

The evidence, as given at the trial, was sufficient to maintain the action so brought against the drawer of the bill of exchange; and the instruction of the court to the jury was erroneous.

*Mr. Crittenden,* for the defendant in error, said that the only question in the case related to the sufficiency of the evidence of protest offered by the plaintiff.

By the laws of the State of Mississippi, a protest was necessary and indispensable to the plaintiff's right of recovery. Statute Laws of Mississippi, page 372, 8th section, and page 375, section 17, &c. Offet *v.* Vick, Walker's Reports (Mississippi), 100.

The instrument offered in evidence as such was no legal or valid protest, because the justice of the peace (David H. Dickson) who made it had no authority so to do, it not appearing that there was no notary public in Jackson at the time ready to act, and his authority, by law, being only to make protest for want or in default of a notary public. Statute Laws of Mississippi, section 8, page 373.

If Dickson, as a justice of the peace, was, under the circumstances, authorized to protest, the instrument offered in evidence as a protest, made out near a year after the transaction, cannot be taken or regarded as an authentic or legal instrument, admissible as evidence, especially as it appears that it was neither the first nor second protest made in reference to the same occasion.

It would be subversive of the security and certainty of commercial interests and dealings in such transactions, if such an instrument as that offered in evidence in this case should be received and allowed the effect of a legal protest. The first protest, made at the time of the alleged demand and refusal of payment, is *suppressed*. A *second edition* of it, made out some time after, is also suppressed. And the one now offered in evidence is the third edition, fabricated about one year after the transaction. The proof is, also, that each of these *differed* from the other. It is impossible, as it seems to me, that such an instrument can be regarded as a protest, or admitted in evidence as such.

On both grounds,— 1st. That Dickson had no authority to protest; and 2d. That if he had, the instrument offered in evidence was no protest, — it seems clear that the instruction of the court was correct, and that therefore the judgment ought to be affirmed.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States held by the district judge in and for the Southern District of Mississippi.

The suit was brought on an inland bill of exchange by the indorsee against the drawers, and resulted, in the court below, in a verdict for the defendant on an objection taken to the validity of the protest.

The statute of Mississippi provides for protesting inland bills in case of non-acceptance, or of non-payment by the drawee, after due presentment, in like manner as in case of foreign bills of exchange ; and allows five per cent. damages on the amount for which the bill is drawn. (Howard & Hutchinson, Statutes of Miss., pp. 372, § 8 ; 375, § 17 ; and 376, § 20.).

On the trial, the notary was called as a witness by the plaintiff, and proved the presentment of the bill at maturity, demand of payment, and refusal, and notice to the drawers. And further, that he drew up the protest in form at the time and delivered it to the holders, but that, on account of some alleged defect, which is not stated in the bill of exceptions, it was returned to him, and a second one made out, and delivered, which was also subsequently returned, and a third drawn up, which was the protest offered in evidence. It was made out nearly a year after the presentment.

The court below decided that the protest was invalid, and instructed the jury that the plaintiff could not recover, unless the bill had been duly protested according to the requirement of the statute. Whereupon a verdict was rendered for the defendant.

The bill was presented and the protest made out by a justice of the peace, as a notary *ex officio ;* and on the argument. the ruling of the court was sought to be sustained, on the ground, that the power of this officer to protest bills extended only to cases where the notary was absent or could not be procured. But, on looking into the laws of Mississippi, it was found that a subsequent statute had given the power to this officer in all cases, without any qualification, and the point was given up. (How. & Hutch., p. 430, § 24.)

The ground of objection, therefore, is narrowed down to the time when, and the circumstances under which, the notarial protest was drawn up, in form. And on looking into the cases and books of authority on the subject, it will be found, that, if the bill has been duly presented for acceptance, or payment, and dishonored, and a minute made, at the time, of the steps taken, which is called noting the bill, the protest may be drawn up in form afterwards, at the convenience of the notary. And it has been held, if drawn up at any time before the trial, it will be sufficient. (Chitty on Bills, 334, 436, and cases. Ed. 1842.)

The minute contains a brief record of the facts which transpired on presenting the bill, and the protest, as subsequently made out, is but an extension of them in the customary form. The time of the extension, therefore, would seem to be of no great importance.

For the same reason, if a mistake should occur, no great danger need be apprehended if the notary is permitted to correct it, provided the regular steps have been taken, and noted, to charge the parties. The amendment would not be made from memory, or recollection, but from a written memorandum of the facts.

But, without pursuing this view of the case further, a decisive ground against the ruling of the court below is, that a protest of the bill was not essential to enable the plaintiff to recover.

The statute of Mississippi is taken, substantially, from the 9 and 10 Wm. 3, ch. 17, amended by the 3 and 4 Anne, ch. 9, under which it has always been held by the courts in England that the action at common law was not thereby taken away ; but that an additional remedy was given, by which the holder could recover interest and damages on an inland bill in cases where he was not entitled to them at common law. And that if he chose to waive the benefit of the statute, he might still recover the amount due on the bill, by giving the customary proof of default and notice. (2 Ld. Raym. 992 ; S. C., 1 Salk. 131 ; S. C., 6 Mod. 80 ; 2 Barn. & Ald. 696 ; Chitty on Bills, 466.)

The act of Mississippi is not more explicit and positive in its terms, in respect to the duty of protesting, than that of the 9 and 10 Wm. 3, as will be seen on a comparison of the two acts, and should receive a similar interpretation. It follows, therefore, from this view, as the plaintiff did not claim the five per cent. damages given by the act, he should have been allowed to recover the amount of the bill, principal and interest, on the testimony of the notary alone, independently of the written protest.

It appears from the record, that the defendant put in two pleas to the jurisdiction in the court below, for the want of proper parties; and also the plea of *non assumpsit.* To the latter, the *similiter* was added, upon which issue the cause went down to trial. No notice was taken of the pleas to the jurisdiction.

It is suggested that this affords ground of error on the record.

The plea of *non assumpsit* in bar of the action operated as a waiver of the pleas to the jurisdiction, which doubtless furnishes the reason why no notice was afterwards taken of these pleas by either party. 3 Johns. 105; 6 Bac. Abr. tit. *Pl. & Pl.*, let. *a*, pp. 186, 187; Gould, Pl. ch. 5, § 13.

They were virtually abandoned by the defendant.

It was also suggested, that it appeared from the declaration that Fatheree, the payee of the bill, was a citizen of Mississippi, and that the plaintiff deriving title from him, though a citizen of Virginia, could not maintain the action, for want of jurisdiction within the eleventh section of the Judiciary Act.

The answer to the suggestion is, that the fact upon which it is founded is not sustained by the record. The suit was brought, originally, against Dozier and Fatheree, the drawer and payee, indorsers jointly, who are described in the commencement of the declaration as citizens of the State of Mississippi. But in a subsequent part of the declaration it is averred, that Fatheree, at the time the bill was drawn, and also at the time of its transfer to the plaintiff, was an alien, and resident of Texas.

The suit was discontinued as to Fatheree before the trial, which left it between the plaintiff and the defendant alone.

The plaintiff being a citizen of Virginia, and deriving title through a person competent to maintain a suit in the Circuit Court against the defendant, that court properly took jurisdiction of the case.

In every view taken of the case, we think the court below erred, and that the judgment should be reversed.

Judgment reversed, with *venire de novo* by the court below.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby reversed, with costs, and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to award a *venire facias de novo.*