CITY OF CHARLOTTE v. ATLANTIC BITULITHIC CO.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1915.)

No. 1372.

1. EVIDENCE ⬤⟳555—FACTS OR CONCLUSIONS—INFERENCES FROM COLLECTIVE FACTS.

A paving contract named the city engineer as the representative and agent of the city charged with the duty of seeing that the contractor lived up to his agreement, and authorized him to reject materials, compel the contractor to take out and replace work, and even order the discharge of employés disregarding his directions or found to be incompetent. The specifications were numerous and complicated, and some of

them distinctly technical. In an action on the contract, the engineer testified that he examined and inspected the work after it was completed and accepted it as a compliance with the contract. He was thereupon asked whether in his opinion as an engineer, and from his knowledge of the specifications and contract and his personal observations of the work, it was in compliance with the contract, and was permitted to answer over objection. *Held*, that this was not error, as the question did not, except in a qualified sense, call for expert opinion, but rather for his knowledge and professional judgment respecting the subject of inquiry, and a comparison having been made by him as the work progressed, it was competent for him to state the results of the comparison without confining himself to a detailed recital of what the contractor did and a minute comparison of each item with the specifications.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2376; Dec. Dig. 555.]

**2. CONTRACTS 324, 346—ACTIONS—FORM—ACTION ON QUANTUM MERUIT.**
Where a contract has been completed, suit may be brought upon the contract itself and also in assumpsit, though in the latter case a recovery will be limited to the contract price, and hence, where the complaint in an action on a paving contract set up causes of action on the written contract and for work done and accepted of the value alleged, evidence as to the value of the work done was properly admitted.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1549-1557, 1714, 1718-1751; Dec. Dig. 324, 346.]

**3. APPEAL AND ERROR 1053—HARMLESS ERROR—ADMISSION OF EVIDENCE.**
Where, in such action, the court submitted as the issue for determination the question as to the amount, if anything, which plaintiff was entitled to recover "under the terms of the contract," and told the jury that the question for them to determine was whether or not the pavement came up to the standard provided and stipulated in the contract, and entirely left out of account the right to recover upon a quantum meruit, the proof of value was immaterial, and its admission was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178-4184; Dec. Dig. 1053; Damages, Cent. Dig. § 561.]

**4. APPEAL AND ERROR 1056—HARMLESS ERROR—ADMISSION OF EVIDENCE.**
In an action on a paving contract, where the city counterclaimed for breach of guaranty for a period of five years, contained in a different paving contract, and the jury found that the city was entitled to recover nothing on its counterclaim, the exclusion of evidence as to the cost to the city of making repairs claimed to be necessary was harmless, as the jury must have found that the contractor fulfilled its obligation to keep the pavement in serviceable condition during the five-year period.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187-4193, 4207; Dec. Dig. 1056.]

**5. APPEAL AND ERROR 1053—HARMLESS ERROR—ADMISSION OF EVIDENCE.**
In an action on a paving contract, M., a property owner assessed for the pavement, testified concerning the imperfect quality of the work, and further stated that he had not paid his assessment because in his opinion they got a rotten pavement. In rebuttal, the city engineer was allowed to testify that M. told him he wanted a cheap class of pavement, something to get them out of the mud and not more expensive than necessary to be fairly permanent. *Held*, that while this testimony did not tend to contradict M. on a material issue, and its admission was technically erroneous, it was so inconsequential as not to require a reversal, especially as it was deprived of any possible harm by the court's explicit charge that the fact that the pavement may have been of inferior kind or

class had no status in the case, provided it was of the kind and class contracted for.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. ☞1053.]

6. APPEAL AND ERROR ☞273—RESERVATION OF GROUNDS OF REVIEW—EXCEPTIONS BAD IN PART.

Where a charge excepted to included some correct statements of law, the exception was insufficient to sustain an assignment of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1620–1623; Dec. Dig. ☞273; Trial, Cent. Dig. § 694.]

7. MUNICIPAL CORPORATIONS ☞358—STREET IMPROVEMENT CONTRACTS—PERFORMANCE—BURDEN OF PROOF.

Where a street paving contract named the city engineer as the city's representative and agent in charge of the work, and provided for payment of any balance due within 30 days after the final completion and acceptance of the work by the engineer and executive board, as evidenced by the final estimate and certificate of completion and acceptance, the action of the city engineer in passing upon and accepting the work made a prima facie case that the specifications and requirements of the contract had been complied with, and the burden was upon the city, by the weight of the testimony, to show that the contractor had failed and to what extent.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 890; Dec. Dig. ☞358.]

8. APPEAL AND ERROR ☞173—REVIEW—QUESTIONS NOT RAISED BELOW.

In an action on a street paving contract, an objection that the complaint did not allege presentation of the claim to the proper municipal authorities as required by statute could not be raised for the first time on appeal, as the failure to comply with a condition precedent to the right to sue must be raised in the trial court, so that plaintiff may have an opportunity to avoid or remove the objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1079–1089, 1091–1093, 1095–1098, 1101–1120; Dec. Dig. ☞173.]

9. MUNICIPAL CORPORATIONS ☞374—CONTRACTS—ACTIONS—WAIVER OF DEFENSES.

Where a street paving contract provided for payment of any balance remaining due within 30 days after the final completion and acceptance of the work by the city engineer and executive board, the fact that there had been no acceptance by the executive board was a matter of defense to be set up by plea in abatement in an action on the contract, and was waived by denying liability in any event and trying the case on the merits without a preliminary disposition of the question of acceptance, as matters in abatement must be separately pleaded and tried, and are waived by setting up defenses on the merits and in bar of plaintiff's claim, and especially by going to trial upon such defenses.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. ☞374.]

In Error to the District Court of the United States for the Western District of North Carolina, at Salisbury; James E. Boyd, Judge.

Action by the Atlantic Bitulithic Company against the City of Charlotte. Judgment for plaintiff, and defendant brings error. Affirmed.

Chase Brenizer and H. L. Taylor, both of Charlotte, N. C. (F. I. Osborne, of Charlotte, N. C., on the brief), for plaintiff in error.

Charles W. Tillett, of Charlotte, N. C. (Thomas C. Guthrie, of Charlotte, N. C., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPP, Circuit Judge. [1] The plaintiff in error, defendant below, seeks reversal of a judgment, entered upon the verdict of a jury, in this suit of the Atlantic Bitulithic Company to recover the balance alleged to be due upon a contract for street paving; and such of the errors assigned as appear to merit discussion will be briefly considered. The first of these is a question of evidence which arises in connection with the following provision of the contract:

"Within thirty days after the final completion and acceptance of the work by the engineer and executive board, as evidenced by the final estimate and certificate of completion and acceptance, any balance remaining due to the contractor will be paid to him in cash."

Firth, the city engineer, a witness for the plaintiff, after stating that he had supervision of the work and saw it almost daily during its progress, further testified:

"I examined and inspected the work after it was completed and accepted it as a compliance with the contract."

He was thereupon allowed, over defendant's objection, to answer this question:

"In that connection, in your opinion as an engineer, from your knowledge of the specifications and contract and your personal observations of this work, was it in compliance with the contract?"

It is insisted that this was an erroneous ruling because it permitted the witness to express an opinion upon the chief matter in dispute without stating the facts upon which that opinion was based, and numerous cases are cited which are claimed to support the contention. The rule invoked is well settled, but we are of opinion that it is not applicable. The witness had stated without objection that he examined the work and accepted it as complying with the contract, and we perceive no reason why it was not competent for him to testify that the work had in fact been done in accordance with the contract. The question he was asked, as the jury must have understood it, did not call for expert opinion, except in a qualified sense, but rather for his knowledge and professional judgment respecting the subject · of inquiry. It needs only a glance at the contract to see that the specifications were numerous and complicated, some of them distinctly technical. They related to the kind and quality of materials, their preparation for use, and detailed methods of construction. The witness was the defendant's representative and agent. He was charged with the duty, as repeatedly appears in the specifications, of seeing that the contractor lived up to his agreement in each. particular. He could reject materials which did not meet the contract requirements, compel the contractor to take out and replace work which did not conform to the standard of construction, and even order the discharge of employés who disregarded his directions or were found to be incompetent. Under such circumstances, it seems plain to us that he was properly allowed to state as a fact that the work actually done was of the character and quality called for by the contract; and that his testimony was not incompetent, or otherwise in violation of the rule respecting expert opinion, because his answer involved professional judgment as

well as personal knowledge. As it was his duty to supervise the work during its progress and exercise his authority to require compliance with the contract, so was it clearly permissible for him to testify to the fact that the contractor had fulfilled his obligations. In a case like this it would be quite unreasonable to hold that the engineer should be confined to a detailed recital of what the contractor had done and a minute comparison of each item with the specifications of the contract. Such a course would not only be impracticable but tend to confuse rather than enlighten the jury. The comparison had been made by him as the work progressed, and it was competent for him to state the results of that comparison.

And this view accords with the decisions of the courts generally in analogous cases. For example, Schaefer v. Ely, 84 Conn. 501, 80 Atl. 775, Ann. Cas. 1912D, 899, is directly in point. That was an action on a building contract, and the architect who drew the plans and was familiar with the progress of the work was permitted to give his opinion that the work had been done properly and in accordance with the contract, without detailing the manner in which each item of work had been performed. In sustaining this ruling the Supreme Court of the state said:

"The main objection to this evidence was that the opinion of the witness could not be given, that he must state in detail what he saw, and the various defects, and leave the conclusion of compliance with the contract to be drawn by the court between the contract and the work done. This is an erroneous view. The witness who qualifies as an expert and testifies to his familiarity with contract, plans, specifications, and changes therein, and with the work done, may give his conclusions as to the comparison between these, without detailing at length the manner in which each item of the work done has been performed. When the opinion of the witness in a case is evidence otherwise competent, and the subject of the investigation will be made clearer by its introduction, the opinion should be received. When facts sought to be proved are of so voluminous or complicated a character that their introduction would occupy much time, and might be difficult to understand by themselves, and these many facts are to be proved for the purpose of drawing a conclusion from them, the court may permit a witness who is qualified upon the subject of investigation, and has made the investigation, to express an opinion without giving the details on which the opinion rests."

Other cases in which it has been held that a qualified witness may state that the work of construction has been done in accordance with the contract are Kreuzberger v. Wingfield, 96 Cal. 251, 31 Pac. 109; Stark Grain Co. v. Harry Bros. Co., 57 Tex. Civ. App. 529, 122 S. W. 947; Tucker v. Williams, 2 Hilt. (N. Y.) 562; Taulbee v. Moore, 106 Ky. 749, 51 S. W. 564; and Johnson v. Griffiths & Co. (Tex. Civ. App.) 135 S. W. 683.

In this connection it may be observed, as the court observed in the Connecticut case, that the defendant had full opportunity by cross-examination of the witness to test the extent of his knowledge and the accuracy of his judgment. Instead of attempting in this way to discredit or weaken the testimony, the defendant apparently preferred to rely upon an exception to its admissibility. We deem it not doubtful that the question was properly allowed.

[2, 3] The admission of testimony to the effect that the work done

was worth the contract price, and as to the cost of similar pavements of superior quality, is the basis of a group of exceptions which may be considered together. We are of opinion that reversible error cannot be predicated upon these rulings of the trial court for two reasons. In the first place, it appears to be settled that where a contract has been completed suit may be brought upon the contract itself and also in assumpsit, although in the latter case recovery would be limited to the contract price. In this suit the complaint sets up two causes of action, one upon the written contract and the other for work done and accepted of the value alleged; and the right to recover upon the second count seems to be fully sustained by Dermott v. Jones, 69 U. S. (2 Wall.) 1, 17 L. Ed. 762, in which the Supreme Court said:

"While a special contract remains executory the plaintiff must sue upon it. When it has been fully executed according to its terms, and nothing remains to be done but the payment of the price, he may sue on the contract, or in indebitatus assumpsit, and rely upon the common counts. In either case the contract will determine the rights of the parties."

Apart from this, however, we are of opinion that the testimony became immaterial and its admission harmless because the trial court excluded it from consideration by submitting the issue to the jury in the form of this question:

"What amount, if anything, is the plaintiff entitled to recover of the defendant under the terms of the contract?"

The effect of this charge was to eliminate the second cause of action and confine the jury to finding whether the contract had been performed in accordance with its provisions. And in a later part of the charge the learned judge again said:

"The question for the jury to determine under this issue is whether or not the pavement put down came up to the standard of that class of pavement put down as provided and stipulated in the contract. You have heard the evidence in this case. Was this done or not?"

Indeed, taking the charge as a whole, it is apparent that the right to recover upon a quantum meruit was left out of account altogether, and that a verdict was rendered for the plaintiff because the jury, under instructions which limited the issue to the first cause of action, found that the work had been done in compliance with the contract. This being so, the proof of value became immaterial, and its admission furnishes no ground for reversing the judgment. Cunningham v. Springer, 204 U. S. 647, 27 Sup. Ct. 301, 51 L. Ed. 662, 9 Ann. Cas. 897.

[4] Several exceptions relate to the counterclaim set up by defendant. It appears that there was a prior contract for paving, made in November, 1907, and completed during the following year, which contained a guaranty that the pavement constructed thereunder would remain in good repair and condition for a period of five years and at the end of that period be in good serviceable condition and free from such defects as would impair its usefulness as a roadway. The evidence of defendant tended to show that the pavement in question had not been kept in the condition required by the guaranty, while the plaintiff's proofs were to the effect that all needful repairs had been

made and that the pavement was then free from any defects which would impair its usefulness as a highway. This issue was submitted to the jury in the following question:

"What amount, if anything, is defendant entitled to recover on its counterclaim?"

The jury answered that the city was not entitled to recover anything on its counterclaim. In view of this finding we are of opinion that the judgment should not be disturbed because the trial court refused to allow a witness for defendant to state what it would have cost the city of Charlotte to make the repairs claimed to be necessary. The jury must have found that the repairs made by the contractor had fulfilled the obligation to keep the pavement in serviceable condition during the five-year period, and what the needful repairs would have cost the city became immaterial. In this connection, much is sought to be made of a letter written by plaintiff's president in March, 1913, relating to the subject of these repairs. Without referring in detail to the contents of this letter, it is sufficient to express the opinion that its meaning and intent were properly construed by the trial court, and that no prejudicial error was committed by refusing to allow defendant's witness to state what it would have cost to make the repairs mentioned in the communication.

[5] A witness for defendant, one McAden, a property owner assessed for the pavement in suit, testified at length to the imperfect quality of the work done by the contractor and the numerous respects in which it failed to conform to the specifications. He further stated that he had not paid his assessment "because in my opinion we got a rotten pavement." In view of this testimony, the trial court allowed the city engineer in rebuttal to state that he had a conversation with McAden in which the latter said that he wanted a cheap class of pavement, something to get them out of the mud and not more expensive than necessary to be fairly permanent. It may be conceded that this ruling was technically erroneous, for the testimony did not tend to contradict the witness on a material issue, but it was so inconsequential, if not trivial, that it cannot be seriously regarded as ground for reversal. Moreover, the answer was deprived of any possible harm to defendant by this explicit charge to the jury:

"The fact, gentlemen, that the pavement may have been of inferior kind or class, has no status in this case, provided it was of the kind and class contracted for, whether that be a good pavement, a bad pavement, or an indifferent pavement."

[6, 7] Exception is taken, in rather wholesale fashion, to that portion of the charge, covering upwards of a page in the printed record, in which is discussed at some length what the defendant calls the burden of proof. It would be enough to say that this exception is not well taken because it embraces all that was said upon a particular subject and fails to point out any specific error. The rule is too familiar to require the support of citation that, where the charge excepted to includes correct statements of the law with others that are incorrect, the exception is insufficient to sustain an assignment of error. But without taking this view of the exception, and assuming

that the question involved is properly raised, we are of opinion that the charge upon this point was not erroneous. The jury were told, among other things, that:

"The action of the agent (or engineer, as he is called here), in passing upon and accepting the work, makes a prima facie case that the specifications and requirements have been complied with, and that, if the defendant denies that conclusion, the burden is upon it, by weight of the testimony, to show that plaintiff failed and to what extent."

These instructions were predicated upon the opinion of this court in Jefferson Hotel Co. v. Brumbaugh, 168 Fed. 867, 94 C. C. A. 279, and the learned judge quoted to the jury the following syllabus from that case:

"Where a building contract constituted the architects the owner's supervising agents, but did not in terms authorize the architects to issue a conclusive final certificate, an architect's final certificate was only prima facie evidence that the work had been performed according to the contract, and placed the burden of proof on the owner to impeach the same for error, mistake, omission, or concealment."

Upon the point here considered we are unable to distinguish the Brumbaugh Case from the case at bar, and it follows, since we adhere to the views then expressed, that the charge in question must be held a correct application of the law to the facts developed at the trial. This is in no wise a variance with what is said in Sweeney v. Erving, 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905. That case merely holds, in a negligence action, that where the rule of res ipsa loquitur applies it does not have the effect of shifting the burden of proof. Obviously, the doctrine of res ipsa loquitur has no application to the present controversy.

[8] It is argued for the first time in this court that the judgment should be reversed because the complaint does not state a cause of action and because it shows on its face that the trial court was without jurisdiction. This contention is based upon a statute of North Carolina which provides as follows:

"No person shall sue any city, county, town, or other municipal corporation for any debt or demand whatsoever unless the claimant shall have made a demand upon the proper municipal authorities. And every action shall be dismissed unless the complaint shall be verified and contain the following allegations: (1) That the claimant presented his claim to the lawful municipal authorities to be audited and allowed, and that they had neglected to act upon it, or had disallowed it; or (2) that he had presented to the treasurer of said municipal corporation the claim sued on, which had been so allowed and audited, and that such treasurer had notwithstanding neglected to pay it." Revisal, § 1384.

Conceding that the complaint does not contain the allegations required by this statute, the conclusive answer to the contention is that it comes too late. This court is a court of errors only, and will not consider questions not raised in the court below. The objection that there has been a failure to comply with a condition precedent to the right to sue must be raised in the trial court, so that the plaintiff may have opportunity to avoid or remove the objection; it cannot be raised for the first time on appeal. Wetzel & T. Ry. Co. v. Tennis Bros. Co., 145 Fed. 458, 75 C. C. A. 266, 7 Ann. Cas. 426; Wilfong v.

Ontario Land Co., 171 Fed. 51, 96 C. C. A. 293; Carr v. Fife, 156 U. S. 494, 15 Sup. Ct. 427, 39 L. Ed. 508; Brown v. Gurney, 201 U. S. 184, 26 Sup. Ct. 509, 50 L. Ed. 717; Campbell v. United States, 224 U. S. 99, 32 Sup. Ct. 398, 56 L. Ed. 684.

[9] Although the question is not raised in the assignments of error, except it may be in connection with the questions of evidence already discussed, the defendant earnestly contends that the action must fail because the work done was not accepted by the executive board, as provided by the terms of the contract. We are not prepared to say, in view of certain provisions in the city charter, that the acceptance of the engineer and inspectors was not in law an acceptance by the executive board. But without so deciding, we are of opinion, upon the facts here of record, that this was a matter of defense to be set up by plea in abatement, and that the denial of liability in any event and consent to try the case on the merits, without preliminary disposition of the question of acceptance, operated as a waiver of any defense based upon failure to show acceptance by the executive board. So this court held in City of Greensboro v. Southern Paving & Construction Co., 168 Fed. 880, 94 C. C. A. 292, a case which appears to cover the point. The opinion in that case states the principle as follows:

"If it is desired to rely upon these defenses, it was its plain duty to demand such independent ascertainment of them. It did not do so, but it, in effect, sought the advantage of having them, if possible, secure for it a final judgment where it would have been entitled by reason of them to only a restricted one of dismissal without prejudice, and this by allowing them to be tried with other matters in bar by the same jury. Under the plain principles above set forth, it must be held to have waived these defenses in abatement. The court below could have excluded all evidence touching them upon the trial actually had, and it will therefore not be allowed to rely here upon the failure of them in the court below as ground of error."

It is a general rule of common-law pleading that matters in abatement must be separately pleaded and tried, and that by setting up defenses on the merits and in bar of plaintiff's claim, and especially by going to trial upon such defenses, the matters in abatement are deemed to be waived. Bailey v. Dozier, 47 U. S. (6 How.) 23, 12 L. Ed. 328; Sheppard v. Graves, 55 U. S. (14 How.) 504, 14 L. Ed. 518; Railroad Co. v. Harris, 79 U. S. (12 Wall.) 65, 20 L. Ed. 354; 1 Cyc. 136.

It suffices to say, without further comment, that careful study of the record fails to disclose reversible error, and the judgment will therefore be affirmed.