### CHESAPEAKE & O. RY. CO. v. HARE et al.

(Circuit Court of Appeals, Fourth Circuit. October 21, 1922.)

No. 2003.

1. **Waters and water courses** ⬅179(6)—**Cause of obstruction of flow of river causing overflow of plaintiffs' land held for jury.**

   In an action against a railroad for damage to plaintiffs' land from obstruction of flow of river and consequent overflow of plaintiffs' land, the question of whether the obstruction was caused by a cliff which fell into the river when railroad in the construction of its roadbed blasted the cliff, or by the breaking of an ice gorge by an almost unprecedented flood, as claimed by the railroad, *held* for the jury.

2. **Waters and water courses** ⬅178(1)—**Future damage to land to be expected from obstruction of flow of river not recoverable.**

   Where a railroad by the obstruction of the flow of a river caused the water to flow on plaintiffs' land, plaintiffs could not recover for future damage to the land to be expected from the obstruction and the conse-

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

quent impairment of its present market value, but could recover such occasional damages as from time to time they occur.

3. **Waters and water courses** ☞178(1)—**Occasional damages to lands of riparian owner from obstruction of current recoverable only as from time to time they occur.**

Where a railroad company, by temporary or permanent structures or fills built in a stream, obstructs the channel, and thereby diverts the regular flow of the waters therein, resulting in occasional damages to the lands of a riparian owner, such damages in contemplation of law are impermanent, intermittent, and temporary, as distinguished from permanent damages, and recovery therefor is limited to the damages as from time to time they occur.

4. **Appeal and error** ☞1053(2)—**Admission of evidence subsequently withdrawn from jury held harmless.**

The admission of evidence as to damages *held* harmless, where the court subsequently withdrew the evidence from the jury and at least three times explicitly instructed the jury to disregard it.

5. **Appeal and error** ☞1053(2)—**When error cannot be cured.**

Error will not be considered corrected when it appears to the appellate court that the impression made by incompetent evidence was prejudicial and too deep to be removed by an instruction to disregard it.

6. **Appeal and error** ☞1050(1)—**Opinion of person not shown to have been representative of defendant that defendant would compensate plaintiffs if it had unlawfully inflicted injury held harmless.**

In an action against a railroad for damage to land from obstruction of flow of river causing overflow of plaintiffs' land, admission of conversations and correspondence of a plaintiff with a certain person, not shown to have been the representative of the railroad, authorized to deal with the plaintiffs, in which such person stated that in his opinion the railroad would compensate the plaintiffs if it had unlawfully inflicted the injury, *held* harmless.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; Henry A. Middleton Smith, Judge.

Action by O. S. Hare and others against the Chesapeake & Ohio Railway Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Herbert Fitzpatrick, C. W. Strickling, and Fitzpatrick, Brown & Davis, all of Huntington, W. Va., for plaintiff in error.

Randolph Bias, of Williamson, W. Va., D. E. French and French, Easley & Easley, all of Bluefield, W. Va., for defendants in error.

Before WOODS and WADDILL, Circuit Judges, and GRONER, District Judge.

WOODS, Circuit Judge. The plaintiffs, O. S. Hare, Rush Elkins, Mary E. Elkins, and Nannie H. Wainwright, recovered judgment for $7,500 against the defendant, Chesapeake & Ohio Railway Company, for damage to their land alleged to have been caused by the obstruction of the Guyandotte river.

Gilbert, a town of about 500 inhabitants, is situated mainly on the east side of the river. On the west side the plaintiffs in 1920 had laid off into lots and streets about 20 acres of land, 5.51 acres of which was bottom land on the river. They expected to develop these lots

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

into a town called Black Pine, but none of the lots had been put on the market or sold. A footpath and ford constituted the only means of crossing the river to the railroad, but the plaintiffs contemplated the construction of a road and bridge. The plat of the projected town had not been recorded; and the land had not been returned for taxation as town property, but was assessed as a tract of land at a valuation of $30 an acre.

On the east side of the river the railroad company in 1916 began the construction of a branch or extension of its road to Gilbert. In the construction of its roadbed the railroad company blasted a cliff which fell into the river. According to the testimony on behalf of the plaintiffs, this obstruction of the flow on the east side forced the current from the east to the west side, against the property of plaintiffs; and the river began to erode the banks of plaintiffs' land. In January, 1919, a great flood in the river carried away timber, washed away .72 of an acre, and ran over and carried the soil from about an acre and a half of plaintiffs' land. The washout cut across the streets at the point where the bridge was to be built and compelled a replanning of the projected town. When the new plan was made, including a bridge further down the river, it was found that the elevation of the bridge at one end would be so great as to make the plan impracticable. The plaintiffs' evidence was to the effect that the obstruction in the river caused the washouts and that in consequence the plaintiffs, to their great damage, had been prevented from using their property as a town site.

[1] The evidence on behalf of defendant tended to show that the real cause of the overflow and washing of plaintiffs' land was the breaking of an ice gorge by an almost unprecedented flood. To meet this defense plaintiffs' witnesses testified that the ice gorge was too far away to cause the overflow, and that it had gone out before material damage had been done to the land. On this conflict of evidence the court was obliged to submit to the jury the issue of defendant's liability.

[2-4] A number of witnesses testified as to the amount of the damage. On behalf of the plaintiffs some of them, over defendant's objection, were allowed to include in their estimate the future damage to the land to be expected from the obstruction and the consequent impairment of its present market value. This testimony was incompetent. Where a railroad company, by temporary or permanent structures or fills built in a stream, obstructs the channel, and thereby diverts the regular flow of the waters therein, resulting in occasional damages to the lands of a riparian owner, such damages in contemplation of law are impermanent, intermittent, and temporary, as distinguished from permanent damages, and recovery therefor is limited to the damages as from time to time they occur. Covert v. C. & O., 85 W. Va. 64, 100 S. E. 854; McHenry v. Parkersburg, 66 W. Va. 533, 66 S. E. 750, 29 L. R. A. (N. S.) 860. But admission of this evidence was harmless, because it was taken entirely away from the consideration of the jury. The District Judge at least three times repeated the explicit instruction to the jury that they should not include in their verdict future or

prospective damages and that they should disregard evidence on that subject. In Pennsylvania Co. v. Roy, 102 U. S. 451, 459, 26 L. Ed. 141, the court says:

"The charge from the court that the jury should not consider evidence which had been improperly admitted was equivalent to striking it out of the case. The exception to its admission fell when the error was subsequently corrected by instructions too clear and positive to be misunderstood by the jury. The presumption should not be indulged that the jury were too ignorant to comprehend, or were too unmindful of their duty to respect, instructions as to matters peculiarly within the province of the court to determine. It should rather be, so far as this court is concerned, that the jury were influenced in their verdict only by legal evidence. Any other rule would make it necessary at every trial, where an error in the admission of proof is committed, of which error the court becomes aware before the final submission of the case to the jury, to suspend the trial, discharge the jury, and commence anew. A rule of practice leading to such results cannot meet with approval." Hopt v. Utah, 120 U. S. 430, 438, 7 Sup. Ct. 614, 30 L. Ed. 708; City of Charlotte v. Atlantic Bitulithic Co. (4th Circuit) 228 Fed. 456, 461, 143 C. C. A. 38; Oates v. United States (4th Circuit) 233 Fed. 201, 204, 147 C. C. A. 207.

[5] The exception to this general rule is that the error will not be considered corrected when it appears to the appellate court that the impression made by incompetent evidence was prejudicial and too deep to be removed by an instruction to disregard it. Throckmorton v. Holt, 180 U. S. 552, 21 Sup. Ct. 474, 45 L. Ed. 663; Frey v. Welch Grape Juice Co. (4th Circuit) 240 Fed. 114, 117, 153 C. C. A. 150. But here it is evident from the verdict that no such impression was made by the incompetent evidence. The witnesses for the plaintiffs estimated the damages at from $25,000 to $30,000, and the verdict was little more than one-fourth of that amount. It is an important consideration, too, that the District Judge directed the special attention of the jury to the difficulties and expense that would be necessary in the development of the land into town lots of value, and with elaborate care cautioned them against taking into account speculative or merely hoped for future value.

[6] The defendant complains of the improper admission of conversations and correspondence of the plaintiff Hare with Charles Bronson, because there was no evidence that Bronson was the representative of the defendant authorized to deal with the plaintiffs. Assuming the testimony to be incompetent, we are unable to see that it had any influence on the result. Taking it as a whole it amounted to nothing more than an expression by Bronson of his opinion that the defendant would compensate the plaintiffs if it had unlawfully inflicted injury. It is to be presumed that the president of the road would have expressed the same opinion.

On the whole, the record shows that every right of the defendant was carefully guarded on the trial, and that there is no ground for reversal.

Affirmed.