C. M. SPRING DRUG CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 12, 1926.)

No. 6613.

1. Criminal law ⊙⟶37—Government, having reasonable cause to believe law is being violated, may legally entrap defendant by decoy letters or pretended purchases.

Where government or its agents have reasonable cause to believe law is being violated by defendant, they may legally entrap defendant by decoy letters or pretended purchases.

2. Poisons ⊙⟶4.

Sales of narcotics to government agents, on fictitious and forged orders, held to constitute sales within inhibition of Harrison Narcotic Act (Comp. St. §§ 6287g–6287q).

3. Witnesses ⊙⟶48(2)—Witness is not disqualified in prosecution under Harrison Narcotic Law because of having pleaded guilty to unlawful sale of narcotics; such going only to credibility (Comp. St. §§ 6287g–6287q).

Witness, in prosecution for violation of Harrison Narcotic Law (Comp. St. §§ 6287g–6287q), is not disqualified because of having pleaded guilty to unlawful sale of narcotics and other crimes; such facts going only to credibility.

4. Poisons ⊙⟶9—Instruction in prosecution under Harrison Narcotic Law that conduct of government agents in effecting pretended sale was not dishonorable held proper (Harrison Narcotic Law [Comp. St. §§ 6287g–6287q]).

In prosecution under Harrison Narcotic Law (Comp. St. §§ 6287g–6287q), instruction that conduct of government agents in effecting pretended sale from defendants was not dishonorable, but that they were in performance of solemn duty imposed on them by government, and that conduct was such as government agents might use, held proper, in view of circumstances of case.

**5. Criminal law ⊝825(4)—Instruction that good character does not within itself prove defense for commission of crime held correct, in absence of request for additional instruction (Harrison Narcotic Law [Comp. St. §§ 6287g–6287q]).**

Instruction in prosecution under Harrison Narcotic Law (Comp. St. §§ 6287g–6287q), that good character does not within itself prove defense for commission of crime, and is not justification, *held* correct, in absence of request for additional instruction.

**6. Criminal law ⊝1129(3)—Assignments of error, that under evidence whole charge of court was erroneous and against law, held too general to raise question on appeal.**

Assignments of error, that whole charge of court was erroneous and wrongfully given and prejudicial to defendant's rights under Constitution, *held* too general to raise any question on appeal.

**7. Poisons ⊝9—Instruction in prosecution under Harrison Narcotic Law, authorizing conviction of all defendants, held not misleading (Comp. St. §§ 6287g–6287q).**

In prosecution under Harrison Narcotic Law (Comp. St. §§ 6287g–6287q), instruction that, if jury believed drug company made sales through its officers and agents on order forms which such officers knew were in wrong hands and were false and forged, conviction of all of defendants would be justified, *held* not misleading, where only officers, and agents directly connected with any transactions were defendants.

**8. Jury ⊝92—Excluding juror because of business transaction with defendant drug company held not reversible error; it being within discretion of trial court (Harrison Narcotic Law [Comp. St. §§ 6287g–6287q]).**

In prosecution under the Harrison Narcotic Law (Comp. St. §§ 6287g–6287q), excluding juror on ground that he had business connection with defendant drug company *held* not reversible error; it being within discretion of trial court to exclude him.

**9. Criminal law ⊝395—Admitting in evidence narcotic order forms taken from defendant's files held proper, in prosecution under Harrison Narcotic Law (Comp. St. §§ 6287g–6287q).**

In prosecution under Harrison Narcotic Law (Comp. St. §§ 6287g–6287q), admitting in evidence narcotic order forms taken from defendant's files *held* proper, where they are preserved for purpose of record in conformity with law, since federal officers were entitled to access thereto, and particularly were they admissible when voluntarily relinquished.

**10. Poisons ⊝9—Permitting prosecution to bring out matter of relative volume of narcotic sales of defendant held erroneous (Harrison Narcotic Law [Comp. St. §§ 6287g–6287q]).**

In prosecution under Harrison Narcotic Law (Comp. St. §§ 6287g–6287q), permitting prosecution to bring before jury matter of relative volume of narcotic sales by defendant drug company, as compared with drug companies in other cities, *held* erroneous.

**11. Criminal law ⊝1169(5)—Although generally direction by presiding judge withdrawing evidence erroneously admitted cures error, yet in exceptional instances such withdrawal does not cure error.**

Although generally, where evidence erroneously admitted is withdrawn by direction of presiding judge, such direction cures any error in its introduction, yet in exceptional cases withdrawal of evidence improperly admitted does not cure error.

**12. Criminal law ⊝1169(5)—Striking out evidence in prosecution under Harrison Narcotic Law relative to volume of sales as compared with other companies, and instruction to disregard, held not to cure error in introduction (Comp. St. §§ 6287g–6287q).**

In prosecution under Harrison Narcotic Law (Comp. St. §§ 6287g–6287q), striking out evidence as to relative volume of defendant's sales as compared with companies in other cities, and instructing jury not to consider it, *held* not to cure error in introduction.

**13. Criminal law ⊝984—Only one of four counts for single violation of Harrison Narcotic Law should have been submitted, and, where all were submitted, held that one judgment could not be sustained and the others annulled (Comp. St. §§ 6287g–6287q).**

Where two government agents made single purchase of morphine and cocaine, only one of four counts for violation of Harrison Narcotic Law (Comp. St. §§ 6287g–6287q) based on such sale should have been submitted to jury, and, where all were submitted, and convictions had on all, one conviction could not be sustained and the others annulled, especially where the indictment was consolidated with others, where, in connection with circumstances of trial, the confusing situation deprived defendants of a fair trial.

**14. Criminal law ⊝763, 764(10)—Instruction in prosecution under Harrison Narcotic Law that jury would be justified, in view of evidence, in believing defendant drug company through agents understood sale was made on fraudulent blanks, and should not have made sale, held invasion of jury's province (Comp. St. §§ 6287g–6287q).**

In prosecution under Harrison Narcotic Law (Comp. St. §§ 6287g–6287q) instruction that jury would be justified, in view of testimony, in believing that defendant drug company, through its officers, understood and knew that sale was made on fraudulent order in wrong hands, and that it ought not to have made sale under such circumstances, *held* invasion of province of jury, constituting reversible error.

Stone, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

The C. M. Spring Drug Company and others were convicted of violations of the Harrison Narcotic Law, and they bring error. Reversed, and remanded for new trial.

A. W. Thurman, of Joplin, Mo., and Howard Gray, of Carthage, Mo., for plaintiffs in error.

S. M. Carmean and C. S. Walden, Asst. U. S. Attys., both of Kansas City, Mo. (Charles C. Madison, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before STONE and KENYON, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge. On the 13th day of June, 1922, a grand jury for the Southwestern division of the Western district of Missouri, returned three indictments against C. M. Spring Drug Company, C. M. Spring, and Russell W. Douglas, charging the defendants with violations of the Act of Congress approved December 17, 1914, as amended, commonly known as the Harrison Narcotic Law (Comp. St. §§ 6287g–6287q). The cases were docketed and numbered 421, 422, and 423, respectively. Indictment No. 421 contained two counts numbered 1 and 2; indictment No. 422 contained eight counts numbered 1 to 8 consecutively; and indictment No. 423 two counts numbered 1 and 2. In each odd-numbered count of all indictments the defendant C. M. Spring Drug Company is alleged to be a wholesale dealer in opium and its derivatives and registered as required by the act, and to have paid the special tax required, and that said defendant on the dates therein specified did sell and give away a quantity of narcotic drugs therein described, not in pursuance of any written order from the purchaser therein specified; and the defendants C. M. Spring and Russell W. Douglas are alleged to have aided and abetted in the commission of said offense. Each even-numbered count of the respective indictments purports to deal with the identical transaction described in the odd-numbered count immediately preceding, but charges the sale specified to have been made on a false, fictitious, and forged order form, purporting to have been signed by the person to whom the same purported to have been issued. The three indictments and all their counts were consolidated for the purpose of trial, and at the commencement of the trial the trial court withdrew from the consideration of the jury all odd-numbered counts of the indictments, and we need give these counts no further consideration. In framing the remaining even-numbered counts, the same general form is observed with the necessary changes of dates, names of purchasers, number of order form, etc.

Count 2 of indictment No. 421 charges, in substance, that on the 6th day of December, 1921, C. M. Spring Drug Company was a wholesale dealer and duly registered with the collector of internal revenue, and had paid the special tax required by law, and did sell one-half ounce of cocaine and one-half ounce of morphine to Charles Goff, not in pursuance of a written order from the said Charles Goff, but upon an order form serial No. D–743752 that had been theretofore sold by the collector of internal revenue of the District of Oklahoma to the B & M Drug Store, registered No. 2076, on which order form was written and printed a false, fictitious, forged, and fraudulent request for said narcotics purporting to have been signed by the B & M Drug Store of Owasso, Okl. The indictment sets out the order in full, and charges that said order was not written and signed by the B & M Drug Store, and that C. M. Spring Drug Company did unlawfully accept and fill the same. That C. M. Spring and Russell W. Douglas, then and there being, did knowingly and feloniously aid and abet the said C. M. Spring Drug Company in the commission of said offense.

Count 2 of indictment No. 422 charges a sale by C. M. Spring Drug Company of date of January 9, 1922, of one ounce of cocaine to one Lucian Matthews upon a forged order numbered D–743751, theretofore sold to the B & M Drug Store, and further charges that defendants C. M. Spring and Russell W. Douglas did aid and abet the drug company in the commission of said offense.

Count 4 of indictment No. 422 charges a sale by C. M. Spring Drug Company of date of January 9, 1922, of one ounce of morphine to one C. H. Spearman upon a forged order numbered D–743751 theretofore sold to the B & M Drug Store, and further charges that defendants C. M. Spring and Russell W. Douglas did aid and abet the drug company in the commission of said offense.

Count 6 of indictment No. 422 charges a sale by C. M. Spring Drug Company of date of January 9, 1922, of one ounce of cocaine and one ounce of morphine to one Lucian Matthews upon a forged order numbered D–743351 theretofore sold to the B & M Drug Store, and further charges that defendants C. M. Spring and Russell W. Douglas did aid and abet the drug company in the commission of said offense.

Count 8 of indictment No. 422 charges a sale by C. M. Spring Drug Company of date of January 9, 1922, of one ounce of morphine and one ounce of cocaine to one C. H. Spearman upon a forged order numbered D–

743751 theretofore sold to the B & M Drug Store, and further charges that the defendants C. M. Spring and Russell W. Douglas did aid and abet the drug company in the commission of said offense.

Count 2 of indictment No. 423 charges a sale by C. M. Spring Drug Company of date of January 9, 1922, of four drams of morphine to one C. H. Spearman upon a forged order numbered T–652858 theretofore sold to T. J. Stewart, M. D., and further charges that the defendants C. M. Spring and Russell W. Douglas did aid and abet the drug company in the commission of said offense.

Now it will be observed that the four even-numbered counts of indictment No. 422—and indeed the four odd-numbered counts before they were withdrawn—are all based upon a single transaction. In this connection the government's testimony tended to show that on the 9th day of January, 1922, the government's witnesses Matthews and Spearman entered the C. M. Spring Drug Company's store in Joplin, Mo., and approached defendant C. M. Spring; that Matthews, who had met Spring before, introduced Spearman as Mr. Scott, his partner, and thereupon it is testified they stepped somewhat aside with Spring and apprised him of their desire to purchase some narcotics; that Spring asked them if they had order blanks, and they said that they had, and each produced two blanks; that some of the blanks were not satisfactory to Spring, and he called defendant Douglas; that Douglas pronounced the blanks in question good, but said that they did not care to handle them, but selected another of the blanks and stated that they would use that one, and thereupon Matthews filled out the blank for the amount of narcotics desired, to wit, one ounce of cocaine and one ounce of morphine, and delivered the order to Douglas, who retired and returned with the entire order of narcotics wrapped up in a single package, and delivered the same to Matthews, whereupon Matthews and Spearman proceeded to the cashier's desk and each passed a $20 bill to the counter and asked to have $4 in change returned to each, which was done. The government apparently treated this transaction as constituting four separate offenses, and to this subject we will revert later.

On the trial, the jury returned verdicts in No. 421 of guilty against the defendants C. M. Spring Drug Company and C. M. Spring, and not guilty as to defendant Russell W. Douglas. In No. 422 verdicts of guilty were returned on all four counts against all defendants; and in No. 423 verdicts of guilty were returned against all defendants. And thereupon the court entered judgment as follows:

In case No. 421, C. M. Spring Drug Company to pay a fine of $2,000, and C. M. Spring to be imprisoned in the United States Penitentiary at Leavenworth, Kan., for a period of 3 years and pay a fine of $500. In case No. 422, that C. M. Spring Drug Company pay a fine of $2,000 on each of the four counts; that C. M. Spring be imprisoned in the United States Penitentiary at Leavenworth, Kan., for a period of 3 years on each of the four counts, and that he pay a fine of $500 on each of the four counts; that the sentence imposed on each of the four counts run concurrently with the sentence imposed in case No. 421; that Russell W. Douglas pay a fine of $200 on each of the four counts. In case No. 423, that C. M. Spring Drug Company pay a fine of $2,000, and that C. M. Spring be imprisoned in the United States Penitentiary at Leavenworth, Kan., for a period of 3 years and pay a fine of $500, sentence of imprisonment to run concurrently with imprisonment imposed in case No. 421; that Russell W. Douglas pay a fine of $200.

Judgment was thereupon rendered against the C. M. Spring Drug Company in the aggregate sum of $12,000, against C. M. Spring in the aggregate sum of $3,000, and against Russell W. Douglas in the aggregate sum of $1,000.

Each of the defendants have sued out writs of error in each of said cases, and by agreement and permission of the court a single bill of exceptions has been settled and filed, covering all three cases; and the assignments of error are jointly filed by all of the defendants.

Defendants assigned fifteen separate errors in their original assignment, and later by permission filed four additional assignments. As frequently occurs, numbers of the assignments are mere varied statements of others, and for convenience we shall classify and group them for the purpose of consideration here.

[1] Assignments of error Nos. 1 to 5, inclusive, involve consideration of substantially the same question and principle. The substance of assignment No. 1 is that the court erred in overruling defendants' motion to abate the indictments and suppress the evidence because the alleged sale was made to servants of the government upon a fictitious and forged order in pursuance of a conspiracy by said agents to entrap the defendants. Assignments Nos. 2 and 3 are to the effect

that the court erred in refusing peremptory instructions of not guilty for the same reasons as are specified in assignment No. 1. Assignment No. 4, in addition to the charge of entrapment, raises the question that the sales alleged were fictitious and not real sales; and assignment No. 5 charges error that at the close of all the evidence, in refusing to sustain defendants' motion to suppress all of the evidence because the indictments were brought about on account of a conspiracy on the part of the agents of the government. We have carefully examined all of the evidence in this connection, and read with patience the briefs of counsel, and are constrained to the opinion that these assignments are without merit. We cannot say that under the evidence the agents of the government did not have reasonable cause to suspect the defendants of violating the law in question. It is well settled by the decisions of the Supreme Court of the United States, we think now universally followed in the several circuits, that, where the government, through its agents, has reasonable cause to believe that the law is being violated by the defendant, they may legally entrap the defendant by decoy letters or by pretended purchases. Price v. United States, 165 U. S. 311, 17 S. Ct. 366, 41 L. Ed. 727; Grimm v. United States, 156 U. S. 604, 15 S. Ct. 470, 39 L. Ed. 550; Goode v. United States, 159 U. S. 663, 16 S. Ct. 136, 40 L. Ed. 297; Andrews v. United States, 162 U. S. 420, 16 S. Ct. 798, 40 L. Ed. 1023; Fiunkin v. United States (C. C. A.) 265 F. 1. The senior Circuit Judge of this circuit very clearly states the rule in Butts v. United States (C. C. A.) 273 F. 35, 18 A. L. R. 143.

[2] As to the additional point raised by assignment of error No. 4, that the transaction in question did not constitute a sale, the question seems to have been squarely passed upon in this circuit in Smith v. United States, 284 F. 673, and it was there held that a transaction similar to the ones in question constituted a sale within the inhibition of the Harrison Narcotic Act.

Assignment No. 6: "That the court instructed the jury to find the defendants not guilty on odd-numbered counts of indictments numbered 421, 422, and 423, and, having so instructed, the court erred in not instructing the jury that the jury should find for the defendants on the even-numbered counts of the indictments. That said instruction in that respect was unauthorized for the reasons set forth in assignments numbered 3, 4, and 5." What we have said with respect to assign-

ments Nos. 3, 4, and 5, is also conclusive as to assignment No. 6.

[3] Assignment No. 7, is to the effect that the court erred in instructing the jury that they might find against defendants on the second count of indictment 421, for the reason that the same was based on the testimony of Charles Goff, an addict, who admitted that that he had pleaded guilty to the unlawful sale of narcotics, and other crimes, and that his testimony was not corroborated. We know of no authority, and none is cited, to the effect that an addict is not a competent witness. Neither does the fact that the witness had pleaded guilty or been convicted of a crime disqualify him. Such facts go to the credibility of the witness only. Counsel for plaintiffs in error, in support of their contention, cite Crawford v. United States, 212 U. S. 203, 29 S. Ct. 260, 59 L. Ed. 465, 15 Ann. Cas. 392, and Naftzger v. United States, 200 F. 497, 118 C. C. A. 598. These cases do not support counsel's contention, but do stress the thought that they should not be treated as ordinary witnesses of good character, that their testimony should be taken with caution, and in weighing the testimony consider whether they have been corroborated. The question of corroboration is to be considered in connection with weighing the testimony, and does not go absolutely to the disqualification of the witness. But in this case, were the question to be controlling, we would have no difficulty in concluding that there was corroboration of the witness Goff.

[4] Assignment No. 8, predicates error on the charge of the court respecting the conduct of the government agents Greene, Grieson, and Witten. It is pointed out that the court charged that the conduct of these witnesses in effecting the pretended sale "was not dishonorable in any respect, but those gentlemen were in the performance of a solemn duty imposed upon them by their government, and that, if the jury believed their testimony, which they were justified in believing, that they were there and did search Goff before sending him to the drug store, then you are instructed that such conduct upon their part was such conduct as government agents do use and may use," and other matter of the same tenure. Viewed in the light of the testimony and circumstances, we think the language of the trial judge was not erroneous.

[5] Assignment No. 9, predicates error on the court's instruction to the jury that: "Good character does not, within itself, prove a defense for the commission of a crime. It

is not a justification for a crime. It is not an excuse for a crime." We think the court here stated the law correctly. If defendants desired further elaboration or explanation on the subject, they should have requested additional instruction. No additional instruction on this point was requested.

Assignments Nos. 10 and 11, are as follows:

Assignment No. 10: "That under the indictments and under all the evidence the whole charge of the court was erroneous and against the law of the land, and was wrongfully given."

Assignment No. 11: "Because under the indictments and under all the evidence the charge of the court was erroneous and prejudicial to the rights of the defendants under the Constitution and laws of the United States."

[6] These assignments are too general and raise no question on this record. Counsel for plaintiffs in error apparently recognized this for they have not argued them upon the brief.

Assignment No. 12: That the court erred in instructing the jury as follows: "Now, gentlemen, if you should believe and find from the evidence in this case that the C. M. Spring Drug Company made sales through its officers and agents of the narcotics mentioned in the evidence to the parties mentioned in the evidence, and that the forms were used and the requests made on such forms under such circumstances that the drug company, through its officers and agents, knew such order forms were in wrong hands; that is to say, they were not in the hands of an agent or attorney of such registrant or somebody duly authorized by him to make such purchase—if you believe, as the court charges, that said sales were made with knowledge on the part of the drug company, its agents and servants, that such blanks were in wrong hands and that they were false, fraudulent, and forged, then, gentlemen, you will be entirely justified in convicting each and all of the defendants on the charges made."

[7] We think in this connection that the jury were not misled. The only officer and agent connected directly with any of the transactions charged were C. M. Spring, president of the C. M. Spring Drug Company, and Russell W. Douglas, an employee. Viewed in the light of the record, we think there was no reversible error on this assignment.

Assignments Nos. 13, 14, and 15 are general, and raise no specific questions.

[8] Additional assignment No. 1 is to the effect that the court erred in excluding the juror Barclay upon the ground that he had had some business connection with the C. M. Spring Drug Company. While we think it quite probable that no error would have been committed by retaining this juror, still we think it within the discretion of the trial court to exclude him. The defendants had trial before a competent jury, and no prejudice in this respect resulted.

[9] Additional assignment No. 2: That the court erred in admitting in evidence order forms Exhibits A to L, for the reason that they were all forms illegally seized by the officers of the government. The record clearly shows that these were order forms on file and being preserved by the defendant corporation, that they were preserved for the purpose of record in conformity with an act of Congress, and that, by the provisions of the law under which they were kept, the federal officers were entitled to access to them at all times. We think they were not private papers of the drug company or any other defendant. But there is another reason why no error was committed in receiving these documents in evidence. They were voluntarily relinquished to the government officers by the agents of the corporation.

Additional assignment No. 3 raises the same question as assignment No. 4, and is therefore without merit.

Additional assignment No. 4 presents a more serious question than any previous assignment. It is: "That the court erred in allowing witness Grieson to testify as to the volume of the narcotics purchased and the volume of the narcotics sold by the C. M. Spring Drug Company prior to December 6, 1921."

This assignment goes to certain questions propounded by the prosecution to the witness Grieson, a government inspector. We quote the testimony from the record.

"Q. I want to ask you if there was anything in the volume of narcotics purchased, and the volume sold by the C. M. Spring Drug Company prior to December 6th, that caused you to make this investigation?

"Mr. Thurman: I object to that. The witness said awhile ago there is no limitation on the narcotic sale. Another thing, that calls for an expert; other houses of the same size might not have been in business so long; and it certainly is an improper question.

"The Court: Objection overruled.

"Defendants except.

"Mr. Gray: The further objection, that the witness has already testified, in order to

determine the amount of calls that a wholesale house would have for these drugs, you must take into consideration its location, the character of the inhabitants supplied, and matters of that nature, and to average it up and say whether you do average with other wholesale drug stores is certainly an improper test to apply as to whether a man has violated a criminal law or not.

"The Court: Overruled.

"Defendants except.

"Q. What do you say as to that? A. Would I be permitted to state why I arrived at my conclusion?

"The Court: Yes; you may.

"A.) It was by deliberate comparison between the volume of business done. The C. J. Lincoln Drug Company, at Little Rock, Ark., do a volume of business something like $750,000 to $1,000,000, and I think a larger volume gross business than the C. M. Spring Drug Company. May I state it was the C. J. Lincoln Drug Company where I got the line on prices? The C. M. Spring Drug Company, in narcotics alone, did several times, or purchased and sold several times, the amount of narcotics during the year 1921, I think it was, than the C. J. Lincoln Drug Company did.

"Mr. Gray: I move to strike it all out, for the reasons originally given, and that the basis of comparison is not rational and not substantial, and not correct in any particular. The demands for this drug in the territory in which Little Rock is situated is entirely different from the demands for the drug in this district, where it is a matter of common knowledge that we have people die every day with miner's consumption, and in which the drug is given in every case of that kind, practically, as testified by the witness, during stages of that disease. This is also a territory; a national census itself will show, that supplies four times the population of Little Rock, and, with a disease of this character, is so incomparable that it can have no weight except to prejudice the jury by simply showing the bald fact in this territory this drug company sold more morphine than some other drug company in some other state.

"Mr. Coon: I think your honor will take judicial notice of the territory Little Rock. There are mines and large oil developments, both in northern Louisiana and Oklahoma, adjacent territory, and in southern Arkansas, and take into consideration this question was —the subject was indirectly referred to by counsel for defendant.

"The Court: The motion to strike out will be sustained, and the jury instructed to disregard the answer."

[10] We think it was error, and very prejudicial, to permit the prosecution to bring out before the jury the matter of relative volume of sales by the C. M. Spring Drug Company as compared with other drug companies in other cities.

[11] We are not unmindful that "the general rule is that, where evidence erroneously admitted is withdrawn from the consideration of the jury by the direction of the presiding judge, such direction cures any error which may have been committed by its introduction. It is also true that in exceptional instances the withdrawal of evidence improperly admitted does not cure the error." Hopt v. Utah, 120 U. S. 430, 7 S. Ct. 614, 30 L. Ed. 708; Waldron v. Waldron, 156 U. S. 361, 15 S. Ct. 383, 39 L. Ed. 453; Throckmorton v. Holt, 180 U. S. 552, 21 S. Ct. 474, 45 L. Ed. 663; Remus v. United States (C. C. A. 6) 291 F. 501, petition for writs of certiorari denied 263 U. S. 717, 44 S. Ct. 180, 68 L. Ed. 522; Newman v. United States (C. C. A. 4) 289 F. 712; Stewart & Co. v. Newby (C. C. A. 4) 266 F. 295; United States v. Boston, C. C. & N. Y. Canal Co. (C. C. A. 1) 271 F. 894; Chesapeake & O. Ry. Co. v. Hare (C. C. A. 4) 283 F. 947; Hill v. Wabash Ry. Co. (C. C. A. 8) 1 F.(2d) 626; Maytag v. Cummins, 260 F. 74, 171 C. C. A. 110, 16 A. L. R. 712 (C. C. A. 8); C., M. & St. P. Ry. Co. v. Newsome, 174 F. 394, 99 C. C. A. 1 (C. C. A. 8); Knickerbocker Trust Co. v. Evans, 188 F. 549, 110 C. C. A. 347 (C. C. A. 1).

[12] We think the facts and circumstances surrounding the occurrence before the jury brings this case within the exception: The statement made by the witness impressed upon the minds of the jury that the very initiation of the charges against the defendants rested upon a "deliberate comparison between the volume of business done" by the Little Rock Company and defendant company.

[13] We now revert to the question referred to earlier in this opinion. In the trial of indictment No. 422, four counts were submitted to the jury, four separate verdicts returned, and four independent sentences and judgments pronounced. We are constrained to the conclusion in this connection that but one of these counts should have been submitted. The two men, Matthews and Spearman entered together, one introduced the other as his partner, and they proceeded to what appears to have been a common negotiation. A single blank was used, and, so far as we are able to discern, a single contract of purchase entered

into—this of course assuming the verity of the government's testimony—and a single package containing the drugs delivered. True, the narcotic agents, by negotiating for two items of drugs and after the purchase each tendering a half of the purchase money, attempted to multiply the offenses, but we think this was without avail. The thought suggests itself, May not one of these judgments be sustained? But which one? We think it would be a dangerous rule to permit trial and submission of a multiplicity of different counts based upon a single alleged offense, and, in case of separate convictions on all counts, to permit the court to select one of the lot and annul the other convictions. The situation is not similar to that presented in Claassen v. United States, 142 U. S. 146, 12 S. Ct. 170, 35 L. Ed. 966, where it is said: "And it is settled law in this court, and in this country generally, that in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error, if any one of the counts is good and warrants the judgment, because, in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good count only." But here there was not a general judgment which could rest upon the one count. The judgments were separate, and they aggregated, so far as the corporation was concerned, beyond that which could rest upon one count. There are other circumstances which we think material to be considered in this connection. Three cases were consolidated, which of itself is calculated to involve rather than simplify the issues, and we think the multiplying of counts upon single transactions, ·considering there were already three distinct cases being tried together, would in the nature of things tend to confuse the minds of the jury. We think that this situation, taken in connection with the circumstances of the trial, some of which have been and others will be mentioned, tended to deprive defendants of a fair trial.

We think at this point we should notice one of the instructions given by the court to the jury in connection with the testimony of the witness Goff. We quote the part of the instructions referred to:

"Now, gentlemen, the testimony is: He went to the C. M. Spring Drug Company, after having been searched by certain agents of the government, and after he had gone there with a blank that had been supplied him, upon which certain erasures had been made, according to the testimony. The officials of the

company, Mr. Spring and Mr. Douglas, after an examination of the blank, said to him the erasure of the blank was too plain, and they would not be willing to sell upon that blank. That thereupon he returned to the room in the Hotel Connor in this city, and there met the narcotic agents, who provided him with another blank. That he returned with a second blank to the C. M. Spring Drug Company, after having been searched for narcotics, and for any money he might have other than the money with which he was supplied. And upon his return with a different blank the C. M. Spring Drug Company, through its agents, supplied him with an ounce of morphine.

"Now, gentlemen, you would be entirely , justified, in view of all that testimony, in believing the C. M. Spring Drug Company, through its officers and agent, understood and knew that was a fraudulent blank; that it was forged; that the blank was in wrong hands; and that it ought not to make a sale to Goff under such circumstances, because the law is that only the person to whom the blank has been issued can, either himself or his authorized agent, make such purchase. And the C. M. Spring Drug Company, through its officers and agents, you may infer from such testimony, was warned when Goff made his second appearance with another blank that he was not the proper bearer of the blank. He was not the registrant, nor was he representing the registrant under such circumstances that they should be justified in dealing with him."

[14] The phase of the charge here criticised is that, after summing up testimony upon a material matter, the trial judge flatly and unqualifiedly said to the jury: "Now, gentlemen, you would be entirely justified, in view of all that testimony, in believing the C. M. Spring Drug Company, through its officers and agents, understood and knew that was a fraudulent blank; that it was forged; that the blank was in wrong hands; and that it ought not to make a sale to Goff under such circumstances." This whole part of the charge strongly intrenches upon the argumentative, and concludes with the direct statement that on the evidence as stated the jury is justified in believing a fact, which, if believed, necessarily leads to a verdict of guilty. We think here the trial court invaded the province of the jury to such an extent as to constitute reversible error so far as concerns indictment No. 421.

In view of what has been said, we are of opinion that the case upon all three indict-

ments should be reversed, and the case remanded for a new trial, and it is so ordered.

Reversed.

STONE, Circuit Judge (dissenting). With all due respect for the majority opinion, I feel compelled to dissent and to state my reasons therefor. The reversal herein is predicated upon three errors, each of which is deemed sufficiently prejudicial to require a new trial. They are (1) that the court admitted evidence of comparative volume of sales of the Spring Drug Company and of the Lincoln Drug Company and its subsequent withdrawal thereof did not cure the error of such admission; (2) that the convictions were upon four different counts of indictment No. 422, when there was but one offense; and (3) that the court erred in its charge by making certain statements set out in the opinion.

1. As shown in the majority opinion, the evidence of comparative volume of sales of the two companies was stricken out and the jury instructed to disregard it. Where incompetent evidence has been erroneously admitted, the general rule is that a withdrawal thereof from the jury by a clear statement of the trial court that such is withdrawn and is to be disregarded cures the error. The reasons for this rule are clearly stated by Mr. Justice Harlan in Pennsylvania Co. v. Roy, 102 U. S. 451, 459 (26 L. Ed. 141), as follows:

"To this position we cannot assent, although we are referred to some adjudged cases which seem to announce the broad proposition that an error in the admission of evidence cannot afterwards be corrected by instructions to the jury, so as to cancel the exception taken to its admission. But such a rule would be exceedingly inconvenient in practice, and would often seriously obstruct the course of business in the courts. It cannot be sustained upon principle, or by sound reason, and is against the great weight of authority. The charge from the court that the jury should not consider evidence which had been improperly admitted, was equivalent to striking it out of the case. The exception to its admission fell when the error was subsequently corrected by instructions too clear and positive to be misunderstood by the jury. The presumption should not be indulged that the jury were too ignorant to comprehend, or were too unmindful of their duty to respect, instructions as to matters peculiarly within the province of the court to determine. It should rather be, so far as this court is concerned, that the jury were influenced in their verdict only by legal evidence. Any other rule would make it necessary in every trial, where an error in the admission of proof is committed, of which error the court becomes aware before the final submission of the case to the jury, to suspend the trial, discharge the jury, and commence anew. A rule of practice leading to such results cannot meet with approval."

It is only in exceptional instances (Hopt v. Utah, 120 U. S. 430, 438, 7 S. Ct. 614, 30 L. Ed. 708), that such withdrawal does not cure the error. Such exceptional instances are present where the language of the withdrawal is not sufficiently clear and definite to indicate the evidence so withdrawn (Throckmorton v. Holt, 180 U. S. 552, 567, 21 S. Ct. 474, 45 L. Ed. 663), or where it is evident to the reviewing court that such a strong impression must have been made upon the minds of the jurors that it could not be removed by such withdrawal (Hopt v. Utah, 120 U. S. 430, 438, 7 S. Ct. 614, 30 L. Ed. 708; Throckmorton v. Holt, 180 U. S. 552, 567, 21 S. Ct. 474, 45 L. Ed. 663). The rule to be applied is "whether or not, considering the whole case and its particular circumstances, the error committed appears to have been of so serious a nature that it must have affected the minds of the jury despite the correction by the court." Waldron v. Waldron, 156 U. S. 361, 383, 15 S. Ct. 383, 389 (39 L. Ed. 453). Applying this rule of considering the whole case and the particular circumstances surrounding this evidence, I think the result is as follows:

The gist of these indictments is that the C. M. Spring Company had sold narcotics on orders which it knew were not genuine, in the sense that they were presented and filled out by parties not entitled to them. C. M. Spring, president of the drug company, and Russell W. Douglas, an employee thereof, were the individuals acting for the company in these transactions. There was no dispute that the narcotics were sold on the specified orders, and the evidence is very positive that they were sold to persons (government agents) who were not those to whom the order blanks had been issued. Therefore the only really contested issue of fact before the jury was as to the knowledge of Spring and of Douglas that these orders were being improperly used by persons not entitled to them. Before the trial began, by pleas to abate the indictments and by motion to suppress evidence, the defendants had raised the question of entrapment. At the close of the evidence, defendants asked "the court to suppress all of the evidence in this case, for the reason that it appears from the testimony that the government agents formed a conspiracy to

procure the defendants to violate the Harrison Narcotic Law, and for the reason it was not a sale to the persons alleged in the indictments, and it was made for the purpose of entrapping and inducing the defendants into the commission of a crime. * * * " The court charged upon the same matter. The majority opinion correctly states the law to be that, "where the government, through its agents, has reasonable cause to believe that the law is being violated by the defendant, they may legally entrap the defendant by decoy letters or by pretended purchases." The sole purpose of the question, which elicited the testimony stricken out, was to show what had led the agents to believe the law was being violated and had caused them to make this investigation. That question was, "I want to ask you if there was anything in the volume of narcotics purchased, and the volume sold by the C. M. Spring Drug Company prior to December 6th, that caused you to make this investigation?" The answer was directed to that one point as is emphasized by the witness asking, "Would I be permitted to state why I arrived at my conclusion?" Again, defendants' counsel, during the cross-examination of this witness and before the above question was asked, first brought the matter of wholesale drug houses handling narcotics into the case. At the end of a rather lengthy and thorough examination as to the variable amounts of narcotics which doctors, hospitals and retail drug stores would use and the factors which might govern such amounts, counsel for defendants inquired as to the number of drug stores in the territory included in the district of the witness as an inspector and then asked, "About how many wholesale houses in all of those states, if you know?" It was this line of inquiry which, obviously, suggested the above inquiry in rebuttal, as the government counsel immediately preceded the above question (eliciting the testimony stricken out) by asking, "Your attention was directed by an inquiry made by Judge Thurman to wholesale houses in your territory; I believe you said about forty wholesale houses doing an exclusively wholesale business like the C. M. Spring Company?" I rather incline to the opinion that, with the issue of entrapment clearly in the case at the time, the evidence was admissible for the only purpose for which it was offered, to wit, to show reasonable cause to believe unlawful acts. But, even if it were inadmissible, it was not directed at the real issue of fact before the jury; was upon a collateral or subsidiary matter; was not stressed, repeated, nor emphasized to the jury (Hill v. Wabash

Ry. Co., 1 F.[2d] 626, 628, this court); was but a single question and answer (Throckmorton v. Holt, 180 U. S. 552, 567, 21 S. Ct. 474, 45 L. Ed. 663), and was clearly withdrawn, and the jury instructed to disregard it, immediately following an objection which set forth clearly the reasons why such comparison could not be made. To my mind, it presents an instance of testimony suggested, if not invited, by defendants; not concerning the main issue of fact; presented with no particular impressiveness and promptly and clearly withdrawn. I cannot think evidence of this character and presented under such circumstances could possibly impress the jury to the prejudice of defendants, much less overcome the presumption "that the jury were influenced in their verdict only by legal evidence." Pennsylvania Co. v. Roy, 102 U. S. 451, 459 (26 L. Ed. 141).

2. The majority are of the opinion that the four counts (submitted to the jury) of indictment No. 422 were for one offense; that but one count should have been submitted; and, therefore, that the conviction on no one of the counts can be sustained. The separate cases (indictments Nos. 421, 422, and 423) were consolidated in this trial. There was but one count submitted in each of cases Nos. 421 and 423. The punishments assessed were, in case No. 421, a fine of $2,000 against the company, a fine of $500 and 3 years' imprisonment against C. M. Spring; in case No. 422, a like sentence on each count as to the company and Spring, and a fine of $200 on each count against Douglas; in case No. 423, a like sentence as upon single count in No. 422. All imprisonment sentences were to run concurrently—thus the practical result was a single sentence of 3 years for C. M. Spring. The only real effect of striking down all or all but one of the counts of No. 422 would be a reduction of the fines assessed against each of the three defendants. I do not see how any error of this kind in No. 422 could affect the other two cases in the slightest and I do not understand the majority opinion as having such a meaning. Considering, then, No. 422 as alone being affected. Accepting the view that only one offense was covered by No. 422, what is the result? There is no contention that each of the four counts submitted did not, standing alone, constitute an offense. There was a separate verdict and an identical sentence in each. Because three of the counts are good duplications of the other one, should all be stricken down and should convictions on all, with identical sentences be held void? The jury found guilt as to each separately. The sentence was the same, so that it matters

not which one is preserved. This court finds no objection to any count outside of the duplication. It seems to me the logical procedure would be to sustain one count and annul the sentences on the other three. The practical result would be reduction of the total fines in No. 422 to $2,000 for the company, $500 for Spring, and $200 for Douglas, leaving the prison sentence of Spring unaffected, because to be served concurrently. The majority opinion distinguishes this case from Claassen v. United States, 142 U. S. 140, 12 S. Ct. 169, 35 L. Ed. 966. In my judgment, the Claassen Case is directly in point as to the matters here presented. There, eleven counts had been submitted to the jury resulting in verdicts of acquittal as to six counts and conviction as to five. The sentence was not upon each count but a general one of imprisonment for 6 years. I can see how that case would be stronger for defendant than the one before us, because it might be argued that the court would not have assessed so large a penalty on one count as upon five, but the Supreme Court there (page 147) said: "The sentence being to imprisonment for not less than 5 years nor more than 10, which was the only sentence authorized for a single offense under the statute on which the defendant was indicted, there is no reason why that sentence should not be applied to any one of the counts which was good."

"A general verdict of guilty under an indictment containing several counts of necessity imports a conviction as to each count." Moore v. United States, 1 F.(2d) 839, 841, citing Claassen v. United States, 142 U. S. 140, 146, 12 S. Ct. 169, 35 L. Ed. 966, and Ballew v. United States, 160 U. S. 187, 197, 16 S. Ct. 263, 40 L. Ed. 388. Also see Brooks v. United States, 267 U. S. 432, 441, 45 S. Ct. 345, 69 L. Ed. 699, 37 A. L. R. 1407. Also, where the verdict is general and the sentence general, it was said: "It is well settled that, where a verdict of guilty is rendered upon several counts, and the sentence does not exceed that which might be properly imposed upon conviction on the counts which are good, the sentence must stand," citing Claassen v. United States, 142 U. S. 140, 12 S. Ct. 169, 35 L. Ed. 966; Evans v. United States, 153 U. S. 608;[1] Kalen v. United States (C. C. A.) 196 F. 888 (9th Cir.); Wetzel v. United States (C. C. A.) 233 F. 984 (9th Cir.); Bacigalupi v. United States (C. C. A.) 274 F. 367 (9th Cir.). In Pierce v. United States, 252 U. S. 239, 252, 40 S. Ct. 205, 210 (64 L. Ed. 542), the court said: "The conceded insufficiency of the first count of the indictment does not warrant a reversal, since the sentences imposed upon Pierce, Creo, and Zeilman did not exceed that which lawfully might have been imposed under the second, third, or sixth counts, so that the concurrent sentence under the first count adds nothing to their punishment. Claassen v. United States, 142 U. S. 140, 146 [12 S. Ct. 169, 35 L. Ed. 966]; Evans v. United States (2 cases) 153 U. S. 584, 595, 608 [14 S. Ct. 939, 38 L. Ed. 839]; Putnam v. United States, 162 U. S. 687, 714 [16 S. Ct. 923, 40 L. Ed. 1118]; Abrams v. United States, 250 U. S. 616, 619 [40 S. Ct. 17, 63 L. Ed. 1173]."

It is thus clear that, whether the verdict be specifically upon each count or general, and whether the judgment be thus specific or general, sentences on good counts or applicable to good counts will not be set aside. Also see Savage v. United States, 270 F. 15, 17 (this court); Perlowitz v. United States, 282 F. 229, 230 (this court); Egan v. United States, 55 App. D. C. 306, 5 F.(2d) 267; and Id., 52 App. D. C. 384, 287 F. 958, 963; Mills v. United States (C. C. A.) 294 F. 77, 79 (5th Cir.); Bullock v. United States (C. C. A.) 289 F. 29, 30 (6th Cir.); Bruno v. United States (C. C. A.) 289 F. 649, 657 (1st Cir.); Baird v. United States (C. C. A.) 279 F. 509, 511 (6th Cir.). In Woods v. United States (C. C. A.) 279 F. 706, at page 708 (4th Cir.), the court says: "Nothing is better settled than that a verdict and judgment upon an indictment containing several counts should not be reversed, if any one of the counts is good and warrants the judgment." Ader v. United States (C. C. A.) 284 F. 13 (7th Cir.), was a case involving the same situation (double punishment) as here. In that case as to that contention the court (page 25) said: "This question it is not deemed necessary to determine. No reversal should result here, even if the contention of the plaintiffs in error should prevail in this particular, for, if conviction of plaintiff in error Ader was proper under the fifteenth count and any one of the first thirteen counts, it must be affirmed; and, if conviction of plaintiff in error Skolnik was proper under any single count of the indictment, it also must be affirmed" (citing the Pierce, Abrams and Claassen Cases, supra).

. From the above authorities, as well as upon reason, I think there should be no reversal of No. 422 (much less Nos. 421 and 423) on the ground of duplication (double punishment), but that the judgments thereon should be reduced to a single fine of $2,000 for the

[1] 14 S. Ct. 939, 38 L. Ed. 839.

company, a single fine of $500 and imprisonment for 3 years for Spring, and a single fine of $200 for Douglas.

3. The final ground stated in the majority opinion, for reversal of these cases, is an error in the charge. It is vital to consider the record as to what took place in connection with the charge. At the conclusion of the evidence, defendants urged a motion to suppress *all* of the evidence because the alleged crime was procured through unlawful entrapment. When this motion was overruled, a request for peremptory charges as to each count under each indictment was made, no ground therefor being stated. These requests were sustained as to the odd-numbered counts in each indictment and denied as to the even-numbered counts in each. No further request of any character was then made, and the court delivered the charge. At the conclusion of the charge occurred the following:

"The Court: Has the government any request to make?

"Mr. Coon: None.

"The Court: Has the defense any request to make? (Attorneys for defense confer with court, out of hearing of the jury.)"

Immediately following this conference, the court charged further. Twice in the course of this further charge the court uses the expression, "my attention has been called to the fact," clearly showing that the counsel for defendants had called matters to the attention of the court and that such had been acted upon. There was no exception by either side to any part of the charge or the supplemental charge. Therefore, the situation is that the court was not advised by counsel for defendants, in advance of the charge, what they wished to be covered therein; at the end of the charge, the court directly requested suggestions from the defendants concerning the charge; that request was met and counsel made suggestions; the court then charged further, and it is evident that at least a portion of the further charge was in response to such suggestions; there was no exception to the charge in any particular. It would be difficult to imagine a case where the court could go further toward incorporating in a charge the matters deemed proper by counsel. After such proceeding, the absence of any exception is indisputable proof that, not only as matter of law but as a fact, the charge was as satisfactory to defendants as they deemed the law to allow. There can be no question of the experience and ability of counsel for defendants. This record shows, beyond a doubt, that they ably and energetically contested these cases from beginning to end. The rights of these defendants were not "butchered" by incompetent or inexperienced counsel, but were ably protected by experienced counsel of acknowledged ability and standing.

Further, the portion of the instruction criticised in the majority opinion was not covered by the assignment of errors or by the additional assignment of errors. It is not mentioned in the printed brief and argument or in the typewritten addenda thereto. This record is blank as to any objection to the charge as to any preservation thereof in the assignments of errors, or as to any formal presentation thereof to this court.

It seems to me that reversal of a case under the above circumstances for the above reason tends seriously to weaken certain basic principles of appellate review, which principles are necessary, in my opinion, to the fair and orderly administration of justice by courts. Those principles are that errors should be brought to the attention of the trial court in an orderly way, at a time when that court can be given a fair opportunity to correct them; that errors which are expected to be reviewed should, at the time, be properly preserved; that errors which it is intended shall be reviewed be properly stated and preserved in the assignment of errors. The machinery to accomplish these results is exceedingly simple and is known to all attorneys. All that is needed to call an error to the attention of the trial court is a simple statement or objection, setting forth the reasons therefor. All that is required, in the federal courts, to preserve the error for possible review, is to take an exception thereto. All that is necessary to preserve, absolutely, the error for review is to state it in the assignment of errors with enough particularity to identify it in the record. These requirements are not mere formalities, but are based upon sound reasons drawn from practical experience of many judges and legislators covering the long years during which justice has been orderly administered by the courts of English speaking peoples.

I do not understand the majority opinion as in any way denying the general principles above stated, but, while not stated, it is undoubtedly based upon the idea that this case comes within the only exception recognized to the general rule. In my judgment, this case does not come within that exception. That exception is that, in criminal cases involving the liberty or life of the accused, the appellate court may, not must, examine an alleged error, even though not preserved, and will not reverse a case therefor "unless it is satisfied that there has been a miscarriage of

justice." Feinberg v. United States, 2 F.(2d) 955, 956 (this court). Also see Edwards v. United States, 7 F.(2d) 357, recently decided by this court; Robilio v. United States (C. C. A.) 291 F. 975, 980 (6th Cir.); Bilboa v. United States (C. C. A.) 287 F. 125, 126 (9th Cir.); Thompson v. United States (C. C. A.) 283 F. 895, 896 (3d Cir.); De Jianne v. United States (C. C. A.) 282 F. 737, 739 (3d Cir.); Quarles v. United States (C. C. A.) 274 F. 203, 204 (6th Cir.).

The administration of justice is an intensely practical matter. The rules which govern its procedure and practice are intended to deal with things as they are and to accomplish practical ends. Innumerable rules (statutory and court made) have been promulgated in relation to such procedure and practice. Every litigant is entitled to the protection of every one of such rules applicable to any feature or step in his litigation, but he is not compelled to avail himself thereof. He can, by his own action or failure to act, waive any or all of them except only such as relate to the jurisdiction of the court—to its power to act at all—and he can waive even jurisdiction where the legal provision is for his protection; i. e., jurisdiction of the person. Every litigant can protect himself or employ such counsel, learned in the law, as he may choose to do so for him. But the opposing party has, also, his or its rights and the public, which is vitally interested in the speedy administration of justice and the ending of litigation, and which furnishes and pays for the judicial machinery, has its rights. As said in Evans v. United States, 153 U. S. 584 at page 590, 14 S. Ct. 934, 937 (38 L. Ed. 830), in speaking of an indictment: " * * * It should, after all, be borne in mind that the object of criminal proceedings is to convict the guilty, as well as to shield the innocent, and no impracticable standards of particularity should be set up. * * *" Therefore a litigant cannot be permitted to waive his rights, and, after the time has gone by when they could be protected without delaying or undoing the retrial of his case, reverse his position, and insist upon them. He cannot insist upon an undeviating enforcement of such rules or a trial of such accurate perfection, unless he does so at the proper time and in the proper manner. Nor is it the purpose of appellate courts to secure such accurate results. The function of such review is not to secure a trial wherein every applicable rule of procedure or practice was scrupulously observed, but it is to secure application of such rules only where the complainer has timely invoked their application and the trial court has refused to recognize his rights so brought to its attention. To enforce any other rule would make the duration of litigation dependent upon the ingenuity or, in some cases, the trickery of counsel; would enable criminals to indefinitely delay or to finally escape merited punishment; would be a rank imposition upon the other party, upon the trial court, upon litigants in other cases waiting to be tried, and upon the public generally. The trial of a lawsuit is not entirely a game or contest of wits. But, even if it were, the rules of the game should be observed, and one of the time honored and observed rules is that, when a move has been made, it cannot, out of time, be recalled.

I find nothing in this record to justify a departure from this long-established practice, and I find every reason why the above exception should not here apply.

I think the judgment should be affirmed.