### UNITED STATES v. WASHINGTON.

District Court, D. Nebraska, Omaha Division.
June 16, 1927.

No. 4814.

**1. Criminal law ⬅➡37—Testimony as to purchase of liquor by prohibition agents from defendant held not to raise issue of entrapment.**

Testimony of two prohibition agents that, for the sole purpose of causing the arrest and prosecution of defendant, they dressed as laborers, went to her home, and on being admitted asked her to sell them liquor, that she did so, and they paid for it, *held* not to raise an issue of entrapment.

**2. Criminal law ⬅➡37—On question of entrapment in purchasing liquor, inquiry is limited to whether purchasers went beyond affording defendant opportunity to sell for money.**

On the question of entrapment by prohibition agents in making a purchase of liquor from defendant, the inquiry is limited to whether they went beyond affording defendant an opportunity to sell for the money, if he was fixed to do so, and so minded, whether they acted on hearsay reports or suspicions of prior sales by defendant is irrelevant.

**3. Criminal law ⬅➡37—Sale induced by prohibition agent by appeal to sympathy, pity, or friendship may raise issue of entrapment.**

Effective appeal by a prohibition agent to impulses of compassion, sympathy, pity, friendship, fear, or hope to induce a sale of liquor may raise an issue of entrapment.

Mamie Washington was convicted of selling intoxicating liquor. On motion by defendant for new trial. Granted.

Wm. J. Froelich, Asst. U. S. Atty., of O'Neill, Neb.

Ed. F. Morearty, of Omaha, Neb., for defendant.

WOODROUGH, District Judge. Defendant, Mamie Washington (colored), has been found guilty upon an information charging her with two unlawful sales of intoxicating liquor. She now presents as cause why judgment should not be pronounced: First, that she is innocent; second, that the only evidence against her shows entrapment.

[1] She and a number of her neighbors testified positively that she was attending a convention of the colored ladies of the Organization of Puro (a society devoted to beauty culture) in the city of St. Louis, Mo., at the times when the witnesses for the government say she sold liquor in Omaha, Neb. The testimony on her behalf was further that, after a conviction in this court of violation of the liquor laws some 2½ years ago, she had never again violated the law. On the part of the government, two prohibition agents testified that, for the sole purpose of causing her arrest and prosecution, they went to the home of defendant, knocked at her front door, and asked her to sell them liquor. They say she did so, and they paid her the price. They were dressed up to look like honest workingmen, and used no other deceitful pretenses, except falsely simulating a craving for liquor to drink. They had no information of any kind about defendant, or reason to suspect her of bootlegging, previous to their call. The court must say whether their story shows such an entrapment that the court should refuse to impose sentence. The question must be for the court, because the verdict rests solely on the story of the agents, and they both tell it exactly the same, and it either does or does not show entrapment, determinable solely upon what the law of entrapment is.

As shown by the last report of the Attorney General, there were some 44,000 liquor

prosecutions brought in the federal courts during the fiscal year, and if I may estimate the proportion of them that are based on sales to agents by the cases brought before me, it would seem that at least 30,000 of them are of that kind. Furthermore the Volstead Act (Comp. St. § 10138¼ et seq.) prohibits the searching of homes for liquor without warrants, and no warrant may issue without proof of sales therein. Many violations occur in homes, and the proof of sales therein comes from agents to whom the sales were made. These cases add very largely to the number based on sales to agents.

For the long time that this situation has existed I have refused to discharge, or to direct a jury to discharge, any man who willfully and knowingly sold whisky on the ground that an agent of the government was the vendee who had induced defendant to make the sale. All the cases seemed to me to be alike in real substance. In every case there was the deceitfulness of the agents, disguising their official employment and their purpose, and the money was supplied by the government or through its agents. The lure of the money and the deceit which lulls the victim into a sense of security fully account for the transaction.

There is no federal statute that exempts any man from the penalties of the criminal law upon any consideration of how or by whom he was put up to committing his crime, and no Supreme Court decision holds out to a man who violates the letter of the criminal law any hope that the courts will excuse him on such considerations. It seemed to me to be entirely a political question whether our government should or should not use agents provocateurs to aid in suppressing the liquor traffic, and it seemed to me that, when Congress appropriated money to be used by such agents in purchasing liquor in order to arrest and prosecute the seller, and the administrative officers so applied the money, that there was no power in the courts to abort this work of the other branches of the government.

But the Circuit Courts of Appeals in this and other circuits have found, and by numerous decisions have firmly established, the power of the courts to excuse persons who have sold liquor to government agents from all penalty, if the evidence discloses that there was entrapment, and it is now repeatedly stated that the law as to entrapment is well settled. This court must therefore squarely face the problem of conforming to the conclusions of the reviewing courts and correctly applying this doctrine of entrapment.

Up to date the doctrine has been of no use to the ordinary run of defendants in liquor cases in this district, because the state court decisions are silent about entrapment, many lawyers know nothing about it, and defendants usually have experienced a poignant sense of guilt upon discovering the official identity of their vendees, and have pleaded guilty in large numbers. Only the few who had the best lawyers have benefited. It is the plain duty of this court, therefore, to formally declare the law as it finds it to be.

Careful study of the federal decisions concerning entrapment has not convinced that the law is so entirely settled as to be easy of application in all cases. On the contrary, being based on no statute, and developing without sanction or encouragement by the Supreme Court, the most this court can do is to declare how the doctrine will be applied in the instant case, and others like it on this docket.

In the first place, I will make no general comment on the conduct of these government agents in going to the home of this lone colored woman and offering her money for whisky. Government's attorney argued to the jury that such a course is in present conditions necessary, entirely proper, and within strict right and commendable, and in a number of the decisions concerning entrapment substantially similar conduct by officers is so characterized by some of the courts. Defendant's attorney argued that it was diabolical business, shocking to the moral sense, reprehensible, and unconscionable, and that view also finds reflection in the decisions. I adhere to my opinion that the general question is political, and not judicial.

Defendant makes the point here that the agents' entry into her home and the "buy" effected was without previous complaints or grounds to suspect her of bootlegging. In dozens of these "liquor buy" cases in appellate courts the suspicions of the officers who made the "buy" and the grounds of the suspicions are gone into at length, and the presence or absence of suspicion or grounds to suspect before the approach was made are seen to have influenced the conclusion as to defendant's guilt. In these cases the defendants' stories about what the agents did in making their "buys" tended towards putting the agents in a bad light, and the previous complaints and reports and suspicions of the agents seemed to, in some way, dulcify the

matter. They could not prove defendant guilty of other offenses, or they would have saved the purchase money; but, if there were hearsay complaints and suspicions against defendant, their conduct seemed less intolerable.

As the court puts it in the case of Fisk v. U. S. (C. C. A.) 279 F. 18: "This information, upon which is based the belief of the officers as to the guilt of the defendant, may be and usually is of a character wholly insufficient to convict the defendant of any specific offense. If it were sufficient for that purpose, then recourse to entrapment would be useless and inexcusable." Rather an extreme instance of the influence of this thought is also reflected in Spring Drug Co. v. U. S. (C. C. A.) 12 F.(2d) 852, where the court says as to entrapment: "We cannot say that under the evidence the agents of the government did not have reasonable cause to suspect the defendants of violating the law in question."

These matters of official suspicion and hearsay complaints have also been left in instructions to juries as important in their deliberations where dispute of fact made the question of entrapment vel non for the jury. Indeed in Weiderman v. U. S. (C. C. A.) 10 F.(2d) 745, the whole nature of the charge against defendant was changed by the instruction, which directed the jury to acquit the defendant of the unlawful liquor sale for which he was indicted, unless they found that the defendant was engaged generally in the liquor selling business.

I am satisfied this is all wrong. A man's guilt or innocence of the offense of making a particular sale of liquor cannot be made to depend on such considerations. The Constitution prohibits putting him in jeopardy, or trying or convicting him for any crime, except the one charged in the indictment. When a man is suspected and complained against, the impulse of the mob is to crucify him. Courts are instituted and maintained to defeat that mob impulse. A hated and suspected man must stand before the court like any other, to be fairly tried for the offense charged against him, and not otherwise. Nothing can justify the government's injecting into a trial for a specific offense hearsay complaints or officers' suspicions about other offenses. Judge Sanborn explodes the whole suspicion and hearsay complaint idea in Mattson v. U. S. (C. C. A.) 7 F.(2d) 427, and reminds us that only proof beyond reasonable doubt of all elements of the crime in manner and form as charged can justify conviction. Neither suspicion nor

honest belief that defendant committed other offenses at other times has any place in the inquiry.

[2] The doctrine of entrapment, therefore, as I must apply it, has rightfully nothing to do with anything except the transaction put in issue by the charge and the plea, and the defendant is entrapped and excusable if the transaction itself so discloses, and not otherwise. As applied to "buys" of liquor which government agents make, the limits of the inquiry are simply as to what the agents did in making their "buy," and whether in their zealous activity they went beyond affording the defendant an opportunity to sell for the money, if he was fixed to do it and so minded. If in the particular case they went further, and used undue means to bend the victim to their will and purpose, and so accomplished it, he may be excused from penalty; otherwise, not.

Just what means used by agents are to be deemed undue means, which excuse sales to such agents, is the real problem of the trial court with the liquor docket before it. Repeated dicta that government officers are employed to prevent and suppress crime, not to provoke it, are bruta fulmena in the face of the Attorney General's report of 44,000 liquor cases last year. Of course, all traffic, including liquor traffic, exists for money, and where the government or its agents furnish the money, to that extent they provoke the traffic. But the courts will not hold that all defendants in these cases bottomed on sales to agents are to be excused by the courts, nor by juries under the courts' permissive direction. Application of this doctrine of entrapment compels distinctions to be made, and necessarily introduces consideration of the degree of the effective deceit of the agents, and, as there can be no definition or description of degrees of deceitfulness, the only way this court can help to clarify the matter is to resort to the process of eliminating acts which, under the decisions as they now stand, do not disclose entrapment, or any issue of entrapment to be submitted to the jury.

I am satisfied that the agents' mere offer of money in reasonable amounts to pay for liquor should go out first. Mere asking for and evincing desire for liquor to drink, and drinking it, are not proof of entrapment. The fact that the place where the approach is made is a home is not enough to raise the issue, or that the agents disguise themselves as workingmen, or otherwise deceitfully conceal their official identity and the source and ownership of the money they are using. Still

they may be regarded as merely presenting the victim the opportunity and a price (if it is within reason and nothing more), and the victim cannot appeal either to the court or the jury on the ground of entrapment.

The language of some of the decisions would convey that even this much of deceit suffices to raise the issue of entrapment. But this comes from the habit of the courts to denounce deceit and fraud. They have been doing so for centuries, and never concerned themselves with degrees or measures. Any effective deceit and fraud evoked their nullification of whatever was directly affected thereby. It also appears that, when these courts have been confronted with the proof of the servants of the government engaged in buying and drinking liquor at government cost as a regular vocation, with all of the demoralizing effect upon them necessarily implied from the facts, the judges, being human, have reacted in words not judicially uniform.

[3] But the clear import and commands of the Circuit Court of Appeals' decisions, to which I must conform, are that any conduct of enticement, beguilement, deception, suggestion, persuasion, procurement, or aiding and abetting by agents that goes further, and so effects the sale, introduces the issue of entrapment. Further, it may be stated, any effective appeal made by the agents to the impulses of compassion, sympathy, pity, friendship, fear, or hope, other than the ordinary expectation of gain and profit incident to the traffic, likewise introduces the issue. The issue of entrapment, when introduced, must be tried out within the limits of the Constitution and the criminal law. The most fundamental limitation is that hearsay reports and complaints made to the prohibition office about defendant cannot be gone into. Neither may suspicions in the minds of the officers.

The next question is whether actual proof of other like offenses may be shown by the government on the issue of entrapment. There are undoubtedly many cases in which such proof has been admitted on the issue. Most often such proof is in the form of confessions to the agents, elicited in connection with the entrapment, because, as stated, the previous lack of real proof is the occasion for the entrapment. Such confessions are usually brought forth by the entrapment as directly as the liquor is.

The ancient rule in cases where intent is involved is not helpfully analogous. One's intent to defraud by uttering counterfeits is evidenced by similar utterings. But the question whether undue means have been effectively used by officers to instigate a particular sale of liquor to themselves is in no wise clarified by the inquiry as to whether the victim was or was not generally in the business. The effect of such inquiry is simply to divert the triers of the fact from the charge of the indictment, and, as was done in the case of Weideman, cited, to compel trial and verdict upon a different charge altogether. It might appear of no prejudice to defendant that the government is thus put to proving more against him than charged. But lawyers know better. The constitutional requirement of a specific charge is of vital concern to accused persons; it is for their benefit and protection, and any argument that they might be better off without it is specious. Therefore the government ought not to be permitted in these cases to offer proof of other similar offenses in the first instance.

But, after centuries of criminal law, its administration still remains human, and not mechanically scientific. In this case the defendant comes forward and swears that she never had sold any liquor at any time during the years since her first conviction. No objection is made to her so testifying. It may be that, when she does so testify, she opens the door to the general inquiry, and then real proof of other such offenses may be submitted to rebut her. If the court by instructions then limits the effect of the digression to that purpose, the issue of the charge and the plea may still be kept in mind.

As it is now established and settled that the federal courts have this power to protect the people against entrapments by prohibition agents, the duty of the trial judge becomes imperative. It is not declared that agents provocateur may not be employed by the department, but is obvious from the conclusions of the appellate courts that their work must be carried on within lawful limits and must be entirely nullified by the trial courts when these limits are transcended. Upon the grounds that have been outlined, the conclusion in the instant case is that the defendant, Mamie Washington, cannot prevent judgment against her on the ground of entrapment, either by peremptory action of the court or by submission of the issue to the jury. There remains her claim that she is innocent, which I will treat as an appeal for a new trial.

Obviously, if she was attending a convention in St. Louis, Mo., she could not be selling liquor to agents provocateurs in Omaha. It is a matter capable of definite and positive determination. On this trial she did

what any citizen would think sufficient. She testified herself about her trip and brought in fellow members of her society, who saw her go away and listened to her reports to the local chapter of her order when she got back. She brought in the neighbors, to whom her going on such a mission was important and impressive. None were impeached or discredited, but all were poor colored people.

Let a new trial be granted, and the matter made certain, before she is sent to jail.